[No. 2,442.]

## A. C. BROWN AND FRANCES BROWN, HIS WIFE, *v.* THE CENTRAL LAND COMPANY, SHERMAN DAY, C. T. H. PALMER, CYRUS H. BRADLEY, FREDERICK B. HASWELL, EDWARD McLEAN, AND JACOB HARDY.

Per CROCKETT, J., SPRAGUE, J., concurring:

POWER TO SELL ON CREDIT, WHEN TIME OF CREDIT NOT SPECIFIED.—
Where Brown and wife authorized Taylor to sell their land on credit, without specifying the time of such credit, and Taylor sold on a credit of seven years; *held*, that Taylor could only sell upon a reasonable credit, and that the question of the reasonableness of the credit was to be determined only after testimony heard.

APPEAL from the District Court of the Third Judicial District, Alameda County.

This was an action to quiet title to certain lands in Oakland Township, Alameda County. The defendants Day, Palmer, Bradley, Haswell, McLean, and Hardy, disclaimed. To the answer of The Central Land Company, setting up the contract between Brown and wife and Taylor, the plaintiffs demurred. The demurrer having been sustained, and defendant declining to amend, there was a judgment for plaintiffs. The defendant appealed.

*Charles A. Tuttle*, for Appellant.

If the Central Land Company has an equitable interest in the land by virtue of the facts set out in the answer, the judgment is erroneous. The contract contemplates that

Taylor might make sales, giving credit for a portion of the purchase money beyond September 12th, 1869, without limiting the time of the credit. As it is expressly provided that the sums on credit should bear interest after that date, the intention was that the length of credit might be whatever Taylor saw fit to give.

Again, the contract gave Taylor and his assigns an equitable interest in the land. It was an executory contract. There was no forfeiture provided for on it, except as to all lots not sold, or contracted to be sold, within two years from its date. No money was paid down, but there were mutual promises. "A promise is a good consideration for a promise, and it is so previous to performance and without performance." (1 Parsons on Con. 373, 400.)

The plaintiffs' relation to the land after the contract was made, was an equitable lien upon the purchase money, holding the legal title as security for the enforcement of the lien. (*Ellis* v. *Jeans*, 7 Cal. 409.)

The plaintiffs come into a Court of equity seeking to set aside their own contract, but making no equitable averments in their complaint to authorize it to be set aside. They might have made averments (if any such existed), which, if proved, would have entitled them to equitable relief as against their own contract. But under the form of pleading which they have adopted they must rely on their title, and let us rest on our contracts as they stand. They knew of the existence of our contracts, and if any reasons existed why they were entitled to have them set aside or declared void or forfeited, they should have averred them.

*Montgomery & Evans*, for Respondents.

The contract cannot be treated as a sale vesting any present interest in Taylor, for the reason that there is no mutuality, inasmuch as Taylor does not agree nor in any manner

bind himself to take the property.    (1 Parsons on Con. 373; 1 Bouvier's Inst. 245.)

Taylor was not clothed with unlimited power to extend the time of credit.    Whatever discretionary powers were intrusted to him for the extension of credit beyond the two years, were so intrusted, not in his capacity of purchaser, but in his character of agent of Brown and wife, to be exercised for their benefit when selling the premises for them to a third person.    They might with safety have been willing to allow him, as their agent, to fix the time of payment, when he was interested with them in fixing upon a reasonable time; but it does not follow, because they were willing to trust to his discretion while his interests were identical with their own, that they were equally willing to trust that discretion when his interests were in direct antagonism to theirs.

Considering Taylor in the light of an agent, the defendant acquired no interest in the property, because the one half of the purchase money was not paid within the two years, and because there was no power of substitution in the instrument under which Taylor derived his authority.    He could neither sell his agency to Haswell, nor delegate it to Bradley.    (2 Kent, 633; Smith's Mer. Law, 147; 1 Parsons on Con. 71; Story on Agency, Secs. 13, 29; *Sayre* v. *Michael*, 7 Cal. 535.)

Again, at the time that Haswell and Bradley, the former as assignee, and the latter as sub-agent of Taylor, undertook to sell Brown's land to The Central Land Company, they were simply selling to themselves, being stockholders in the company.

By CROCKETT, J., SPRAGUE, J., concurring:

The substance and legal effect of the contract between Taylor and plaintiffs may be summed up as follows: That

the plaintiffs agreed that at any time within the two years next ensuing, Taylor might purchase for himself, or sell to others, the whole or any portion of the land now in controversy, at a price not less than one thousand dollars in gold coin per acre; but if sold for a larger price, the excess over that sum should go to Taylor; and on receiving the said sum of one thousand dollars per acre in ready money they would surrender the possession and execute a conveyance to the purchaser; but Taylor was not limited to sales for ready money, and might sell on credit, the term of which is not specified in the contract; and the conditions on which credit sales could be made, were: First—That ten per cent of the purchase money should be paid to the plaintiffs in ready money at the time of sale; Second—That the notes or bonds of the purchaser for the remainder of the purchase money, bearing interest after the two years limited in the contract between Taylor and the plaintiffs, at the rate of one and a quarter per cent per month, should be assigned and delivered to the plaintiffs for their security; but they were not to be required to surrender the possession or to convey any title until the whole purchase money and interest were paid, except that, in case one half of the purchase money was paid within the two years next succeeding the date of the contract between Taylor and the plaintiffs, they would, in that event, surrender the possession and convey the title to the purchaser, taking from him a mortgage on the property sold, to secure the remainder of the purchase money with interest. This is the substance of the contract, as I interpret it, or of so much of it as it is necessary to recite.

It will be perceived that the duration of the credit, if sales of that character should be made by Taylor, is not expressly specified or limited in the contract. Nevertheless, the law will presume in such cases that it was the intention of the parties that the time of credit should be reasonable, and such as was usual and customary on sales

of real estate in that vicinity. The law will not impute to the plaintiffs the intention to enter into an absurd contract, whereby they delegate to another the authority to sell a valuable estate on credits to be absolutely fixed by the uncontrolled discretion of the agent, unless that intention is clearly expressed in the contract. When the plaintiffs entered into the contract with Taylor, it evidently never occurred to them that they were authorizing him to sell this valuable property on a credit of fifty or one hundred years, during all which time no interest was to be paid on the purchase money until the expiration of the credit. I think it is obvious that none of the parties could have understood the contract as conferring on Taylor an authority so absurd as this, under which he might, practically, have sequestered the property and withdrawn it from commerce for an unlimited period. But his discretion in this respect was either absolute and unlimited, or it was subject to the condition that the credit must be reasonable and such as was usual and customary on sales of real estate in that vicinity. The latter is clearly the correct construction of this branch of the contract. The answer avers that the sale to The Central Land Company was made within the two years, at a price exceeding one thousand dollars in gold coin per acre; that ten per cent of the purchase money was paid in cash, and promissory notes given for the remainder, payable seven years after date, with interest at one and a quarter per cent per month; and that the notes, properly indorsed, together with ten per cent of the purchase money, were tendered to the plaintiffs within the two years. The transaction appears to have been in strict accordance with the authority conferred upon Taylor, unless the term of credit was unreasonably long, and in excess of the time usually allowed on credit sales of real estate in that vicinity. Whether a credit of seven years was unusual, and contrary to the general custom in that vicinity, is a question of fact to be decided on the

testimony; and whether it was unreasonable, under all the circumstances, is a mixed question of law and fact, to be determined after the testimony is heard.

There is nothing in the point that the contract was not mutual. Taylor covenanted to cause the property to be subdivided, and a map of it to be made and recorded, at his own expense, and that he would use his best efforts to effect sales within the two years. This was a sufficient consideration on his part to support the contract. Nor did the contract establish between Taylor and the plaintiffs a relation of personal trust and confidence which precluded him from executing the contract of sale to The Central Land Company by an attorney in fact. Taylor's powers were strictly defined by the contract. He had no discretion to exercise in respect to the plaintiffs' rights or interests, except in regard to the term of credit; and, as to that, the law restricts it to a reasonable period, with which the plaintiffs must be content, such being the legal effect of their contract. There was no relation of personal trust or confidence between them. The sale by Taylor to Haswell of one half his interest under the contract, cuts no figure in the case. They both united in the contract of sale to The Central Land Company, and it is immaterial whether Haswell had any interest in the contract or not.

As the facts are presented by this record, I think there is but one question in the case requiring a solution, to wit: Whether the credit allowed to The Central Land Company was in accordance with the usage and custom in that vicinity in credit sales of real estate, and was reasonable under all the circumstances. This question can only be decided after the testimony is heard.

Judgment reversed and cause remanded, with an order to the Court below to overrule the demurrer to the answer.

RHODES, C. J., concurring:

I concur in the judgment.

Mr. Justice TEMPLE did not participate in the decision.

WALLACE, J., dissenting:

This action was instituted by the plaintiffs (in possession of certain lands in Oakland Township, Alameda County), who allege that the defendant, a corporation, incorporated under the laws of this State, claims title to the premises adversely to the plaintiffs, by which claim, they aver, their title is clouded, etc.; and they pray that the claim made by the corporation be adjudged invalid, etc.

The defendant filed its answer, setting up a claim to the premises and averring that its interest therein was derived as follows: That on the 12th day of September, 1867, Brown and wife, as parties of the first part, and one George B. Taylor, as party of the second part, mutually entered into a contract as follows:

"This agreement made and entered into this 12th day of September, A. D. 1868, by and between A. C. Brown and Frances Brown, his wife, parties of the first part, and George B. Taylor, party of the second part, all of the County of Alameda and State of California, witnesseth: The said parties of the first part, in consideration of the sum of fifty thousand dollars, in United States gold coin, to be paid as hereinafter set forth, do hereby covenant and agree to sell and convey to the said party of the second part, and to his heirs, representatives and assigns, upon the terms and conditions hereinafter expressed, certain premises lying and being situate in the Township of Oakland, County of Alameda, and State of California, bounded and described as follows, to wit:" (here follows the description of the premises). "The said party of the second part hereby covenants and agrees,

at his own proper cost and expense, to procure a survey of said premises and a division thereof, for purposes of sale, into not less than two hundred distinct lots or parcels, and to procure a map to be made of such survey and divisions, on which said lots and parcels shall be suitably numbered and designated, and to file such map in the office of the Recorder of Alameda County.

"And the said party of the second part does hereby further covenant and agree, for the space of two years from the date hereof, to make diligent effort to effect a sale of said lots and parcels, and of all the said premises, at prices which shall not be less than one thousand dollars, in United States gold coin, for each acre sold, including the streets and any other parts given up to public use. And in case that sales shall be made of said lots or parcels, or any part of said premises, and time extending beyond two years from this date shall be given on any portion of the purchase money, the minimum price at which the same shall be sold shall be at the said rate of one thousand dollars per acre, in gold coin, together with the interest thereon from and after the expiration of two years from the date hereof, at one and one quarter per cent per month, in like gold coin.

"And the said party of the second part does hereby further covenant and agree, that the money proceeds of all sales by him made shall immediately, upon the receipt thereof, be paid over to the said A. C. Brown, one of the said parties of the first part; provided, however, that the money proceeds in excess of the minimum price above fixed for each lot, parcel, or part of said premises, need not be thus paid over, but may be retained by the party of the second part to his own use; and that all bonds and notes taken by the said party of the second part, in security for those portions of the purchase price on which time may be given, or for the security of any contracts of sale entered into, shall be

assigned and delivered to the said A. C. Brown for the security of the said parties of the first part.

"And the said party of the second part does hereby further covenant and agree, that no contract for the sale of any portion of said premises shall be entered into unless at least ten per cent of the purchase price agreed upon, in United States gold coin, shall be paid at the time of such contract, nor unless bonds or notes shall be taken from the purchaser for those portions of the purchase price on which time may be given, payable in United States gold coin; and that all bonds and notes in which the time of payment shall extend beyond two years from the date hereof, shall bear interest at not less than the rate of one and one quarter per cent per month, payable in gold coin.

"And the said parties of the first part do hereby covenant and agree with the said party of the second part, his heirs, representatives, and assigns, that if at any time within two years from the date hereof, the said sum of fifty thousand dollars, in United States gold coin, shall be paid to them, or to either of them, they will immediately upon the receipt thereof execute to the said party of the second part, his heirs, representatives, or assigns, a conveyance of the premises hereinbefore described.

"And the said parties of the first part do hereby further covenant and agree, that they will execute and deliver to purchasers from the said party of the second part conveyances of the premises purchased according to the terms of the several contracts of sale entered into, provided that such contracts shall be such as are herein authorized to be made, and the said party of the second part shall do and perform all the acts and things herein required by him to be done and performed; and provided further, that all acts of conveyance shall be at the expense of the said party of the second part, or of said purchasers.

CAL. REPS. XLII—34

"And the said parties of the first part do hereby further covenant and agree to execute to the party of the second part, his heirs, representatives, or assigns, or to purchasers from said party of the second part, his heirs, representatives, or assigns, upon the written request of the latter, conveyances of any lot, parcel, or portion of said premises; provided, that within said two years the minimum price of one thousand dollars per acre, in United States gold coin, shall have been paid to the said parties of the first part, or either of them, on the lots or parcels to be conveyed.

"And the said parties of the first part do further covenant and agree that whenever, within two years from the date hereof, in the case of any lot or parcel sold, the purchaser shall have paid one half of the purchase price thereof, they will convey to such purchaser the lot or parcel by him purchased, upon receiving from him bonds or notes for the balance of the purchase price then remaining unpaid, according to the terms of the contract of sale made with him, and a mortgage on the premises conveyed to secure the same; provided, that the contract of sale shall be such as is herein authorized; and that they will receive such bonds or notes and mortgages to the amount thereof as payments *pro tanto* upon the said sum of fifty thousand dollars. It is further understood and agreed, that in the case of all sales made or contracted, the said party of the second part may retain to his own use five per cent of the price agreed upon, to be deducted out of the first payment of purchase money; provided, however, that at least ten per cent of the purchase price shall always be collected at the time the contract of sale is made, and shall be paid over to the said A. C. Brown, as hereinbefore recited; and provided further, that the sum so retained shall not be included in any estimate of said fifty thousand dollars, or of said minimum of one thousand dollars, on the payment of which deeds become due from said parties of the first part.

"All acts of conveyance required by the terms of this agreement shall be at the expense of said party of the second part, or his purchasers.

"At the expiration of two years from the date hereof, this agreement shall become void as to all lots, parcels, tracts, and parts of said premises not then sold, or contracted to be sold; but all contracts of sale then remaining executory shall be carried into execution, provided they shall conform to the requirements herein expressed; and from the proceeds thereof one thousand dollars per acre, with interest thereon from and after two years from .this date at the rate of one and one quarter per cent per month, all in United States gold coin, shall be paid to the said parties of the first part, including what may have been theretofore paid on such contracts, and the remainder shall become the property of said party of the second part.

"And it is further understood and agreed, that until such times as deeds shall be executed in pursuance of this agreement, the said parties of the first part shall remain in possession; but on executing a deed of any part of said premises they shall deliver up the possession of such part."

The defendant further avers that in May, 1868, Taylor sold and assigned to one F. B. Haswell an undivided half of his interest in said contract, and in the property and rights held by him thereunder; and that in August, 1869, Taylor appointed one Cyrus Bradley to be his attorney in fact, with authority to enter into contracts on his behalf, etc.

It is then alleged in the answer that in September, 1869, Haswell and Taylor (the latter acting by his attorney in fact, Bradley) made sale of the premises, or the greater portion of them, to the defendant, for fifty-one thousand dollars, in gold coin, five thousand one hundred dollars of which was paid in hand at the time, and the balance to be paid on or before *seven years thereafter,* with interest, etc.

At the time this sale was made, the defendants Day, Palmer, Haswell, McLean, Hardy, and the defendant Cyrus H. Bradley (the said attorney in fact of Taylor), were stockholders in the Central Land Company.

It is important to ascertain *in limine*, whether or not, under the contract in question, Taylor was intrusted by the plaintiffs with the exercise of a discretion in making sales upon credit, and in the proper exercise of which discretion by him they had an interest. There is no doubt that the contract as made permitted Taylor to become the cash purchaser of the property for himself. In case, however, that he should become such purchaser, the plaintiffs would, of course, receive in hand the stipulated price of one thousand dollars per acre for the premises. But it was also stipulated that sales might be made by Taylor involving the cash payment of no more than ten per cent of the purchase price. In that event it was distinctly provided that bonds and notes should be taken from the purchaser for the balance of the purchase price, on which time might be given, and that such bonds and notes, unless falling due within two years, should bear interest at a rate fixed in the contract; that Taylor, in the event of a sale upon credit, was invested with discretion as to the *extent of the credit to be given* upon the deferred payments, necessarily results from the fact that no limit to the credit he might give was prescribed by the terms of the contract itself, and it certainly requires neither illustration nor argument to show that this discretion was one, in the correct exercise of which, by Taylor, the plaintiffs, as the vendors of a valuable estate, situate in a highly improved and rapidly advancing region, would necessarily have a deep interest. Indeed, this is the view upon which I understand the opinion of Mr. Justice Crockett to proceed, for it is there laid down that the plaintiffs are entitled to be protected against the *unreasonable* exercise of this discretion by Taylor, and that, should it appear that the credit,

as given, exceeded that which was usual and customary upon sales of real estate in the vicinity of this property, the plaintiffs may be relieved.

I. It being ascertained that Taylor was intrusted by the plaintiffs with the exercise of a discretion as to the length of credit to be given, it is clear that he could not delegate his discretion to Bradley—the trust was personal, for the Browns had not confided it to any stranger whom Taylor might select.

II. But supposing that he could be permitted to confide it to Bradley, the latter could not, in any event, exercise it in a transaction in which he was himself the beneficial purchaser. As the substitute of Taylor, it was obviously his duty, in conducting the sale, to obtain for the principals of the latter the most favorable terms in his power—*quam maximo potest*. But how was he to be expected to do this in a sale to himself—to the corporation in the stock of which he was personally interested as an owner? His position, upon either hand, involved him in that conflict between his duty to others and his apparent interest for himself, which the law will not countenance or permit. The salutary rule which would forbid Taylor purchasing for himself, upon credit fixed by himself, must also forbid Bradley, the nominee and substitute of Taylor, from doing so, and the interests of the plaintiffs should be as sedulously protected in the one case as in the other.

I, therefore, dissent from the views of my associates, and am of the opinion that the demurrer to the answer of the Central Land Company was correctly sustained by the Court below, and that its judgment should be affirmed here.