88  207
99  161

88  207
126  564

[No. 13921.   Department Two. — March 4, 1891.]

# BRIDGET WILSON, RESPONDENT, v. JOHN MORIARTY, APPELLANT.

REFORMATION OF LEASE — MISTAKE OF LESSOR — FRAUD OF LESSEE. — A judgment reforming a lease is supported by findings that when the plaintiff executed the lease she did not understand it to be a lease for ten years, with the privilege of renewal, but understood it to be for a single term of five years, and that the defendant well knew that she so understood it, and that he fraudulently induced her to misunderstand it, and to execute it under such misunderstanding.

ID. — CONFLICTING EVIDENCE OF MISTAKE — KNOWLEDGE OF LESSEE. — It is sufficient to justify the findings and judgment, if the evidence is conflicting as to the mistake of the lessor, and tends to show that the lessee knew or suspected the plaintiff's mistake.

ID. — INFERENCE OF FRAUD. — The only fraud necessary to sustain the judgment reforming the lease is such as may be inferred from the failure of the lessee to correct the mistake of the lessor, known or suspected by the lessee at the time of the execution of the lease.

ID. — INADEQUACY OF CONSIDERATION — WEAKNESS OF MIND — PLEADINGS — FINDINGS. — Inadequacy of consideration and weakness of mind of the plaintiff are immaterial averments in a complaint to reform a lease on the ground of mistake of the lessor, known or suspected by the lessee, and no findings need be made thereupon.

ID. — PRAYER FOR ALTERNATIVE RELIEF — RESCISSION FOR FRAUD — MATERIALITY OF AVERMENTS — SUFFICIENCY OF FINDINGS. — Where the judgment reforms the lease on the ground of mistake of the lessor, known to the lessee, the fact that the complaint seeks the alternative relief of rescission of the lease for fraud of the lessee in procuring the lease will not make averments in the complaint of fraud, inadequacy of consideration, or weakness of mind material to the relief granted, but the sufficiency of the findings must be tested as if the case was simply one to reform the lease.

ID. — ACKNOWLEDGMENT OF LEASE — INATTENTION TO READING BY NOTARY. — If the lease was executed under a mistake of the lessor as to the contents of the lease, known or suspected by the lessee, the lessor will not

be precluded from obtaining a reformation of the lease because of inattention to the reading of the lease by the notary who took the acknowledgment of the lessor.

ID. — SUBSEQUENT PAROL AGREEMENT — IMPROVEMENTS — INCREASE OF RENT. — A lease cannot be reformed by incorporating in it a subsequent parol agreement with reference to additional improvements upon the leased premises, and an increase of monthly rental on account thereof.

APPEAL from a judgment of the Superior Court of Los Angeles County.

The facts are stated in the opinion.

*Stephen M. White*, and *R. H. F. Variel*, for Appellant.

*Smith & Patton*, *F. H. Howard*, and *Anderson, Fitzgerald & Anderson*, for Respondent.

VANCLIEF, C. — This is an action to rescind a written lease by plaintiff to defendant of a lot and house thereon in the city of Los Angeles, on the ground of alleged fraud on the part of the defendant in procuring the lease; or if a rescission thereof cannot be had, that the lease be reformed, on the ground of alleged mistakes of the plaintiff, which the defendant knew at the time the lease was executed.

The court denied a rescission of the lease, but reformed it. From the judgment reforming the lease, and from an order denying his motion for a new trial, the defendant brings this appeal.

The lease as executed was for the term of ten years, at a rental of $150 per month, with the privilege of a renewal for another term of ten years at the same rent. As reformed, the lease is for the term of only five years, and without the privilege of renewal for any term.

The ultimate facts upon which the revision of the lease was based are expressed in the sixth finding of the court, as follows: —

" That when plaintiff executed said lease, she did not understand said lease to be a lease for ten years, with

the privilege of ten years more, but she understood said lease to be for a single term of five years. And the defendant then and there, at the time of the execution of said lease by plaintiff, well knew that the plaintiff did not understand the same to be for ten years, with the privilege of renewal, and well knew that she understood the same to be for a single term of five years, and the defendant fraudulently induced the plaintiff to misunderstand said instrument and to execute the same under such misunderstanding."

These facts, if justified by the evidence, undoubtedly support the judgment. Section 3399 of the Civil Code provides that "when, through . . . . a mistake of one party, which the other, at the time, knew or suspected, a written contract does not truly express the intention of the parties, it may be revised on the application of a party aggrieved, so as to express that intention, so far as it can be done without prejudice to rights acquired by third persons in good faith, and for value."

But counsel for appellant contend that the finding of the facts above quoted is not justified by the evidence.

The court found as evidentiary facts, which are not disputed, that the plaintiff is unable to read or write; that the defendant is a shrewd merchant and business man of plausible manners, and was on terms of friendship with the plaintiff and her husband, John Wilson; that the defendant drew the lease; and that the lease was not read to or by the husband, or read to the plaintiff, except by the notary at the time she acknowledged it.

The testimony of the plaintiff and her husband was to the effect that during three or four months before the execution of the lease the defendant had been importuning them for a lease of the property for a term of five years; that plaintiff was unwilling to lease the property for a longer term than two years; that the defendant finally persuaded the husband to advise the plaintiff to execute a lease for the term of five years, which he did,

LXXXVIII. CAL.—14

on the ground that the defendant would be a good tenant, with whom they would have no trouble in collecting rent; thereupon the plaintiff consented to the term of five years; that after the defendant drew up the lease he met the plaintiff on the street, near her husband's blacksmith-shop and requested her to go with him to the notary's office and acknowledge it, and her husband then told her to do so, but did not accompany them; when they arrived at the notary's office the defendant offered to read the lease to her, saying it was in his handwriting, but the notary said the law made it his duty to read the instrument to her, as she was a married woman, and he did then read it to her; but believing that the defendant had drawn the lease according to the agreement, and that she already knew that it was a lease for the term of five years only, she did not give sufficient attention to the reading of the notary to discover, and did not discover, that it was a lease for ten years, or that it differed from the lease theretofore agreed upon; and that when she acknowledged the execution she understood and believed it to be a lease for the term of only five years, without any privilege of renewal.

Thomas Leahy testified that about two years before the trial the defendant requested him to go to John Wilson and try to get a lease of the property to defendant for the term of five years; that witness went to Wilson and tried to persuade him to give the lease for five years, but Wilson said: "No; I will not give it for five years; I will give it for three." Witness reported Wilson's answer to defendant.

Michael Leahy testified that he "went, at Moriarty's request, to Mr. Wilson, to see if he could get a lease for ten years, and Mr. Wilson said he would not give it for so long. I took that answer back to him."

H. Boettcher testified that in March, 1887, the rental value of the property as leased to defendant was $250 per month.

G. F. Conant testified that he had been a collector of rents for about six years, and knew the rental value of the property, and that the rental value of the building in March, 1887, "would be something like $350. After the building was remodeled and put in shape as it is now, the storeroom would have brought about two hundred dollars per month at least. I don't know how many rooms there are in the two upper floors, but they would have brought from eight dollars to ten dollars a room, taken as a whole." (It is stipulated that there are twenty-one rooms on the two upper floors.) There is no other evidence as to the rental value of the property than that of these two witnesses. This testimony as to the rental value of the property is cited and considered relevant for no other purpose than so far as it may tend to show defendant's motive for desiring a long term at the rent reserved in the lease.

The defendant testified that he never represented to plaintiff or to her husband that the lease drawn by him was for the term of five years, but that he drew the lease according to an understanding or agreement had with the husband, by which the husband was to advise the plaintiff to accept; but he does not testify that the plaintiff ever agreed to a term of ten years, or that she was ever informed that the lease drawn by him was for a term of ten years, unless she understood the reading thereof by the notary. Nor does he testify that the husband ever read or saw the lease drawn by him, or that he ever informed the husband that it was for a term of ten years, but merely that he drew the lease according to a previous agreement with the husband, which agreement the husband, in his testimony, denies.

Under the settled rule of this court as to conflicting evidence in cases of this kind, I think the finding as to plaintiff's mistake should not be disturbed. The mistake being established, I think the circumstances tend to prove that the defendant "knew or suspected" it; and

that the finding to this effect should also be sustained. The alleged fact that the defendant knew or suspected the plaintiff's mistake was not susceptible of direct proof, except by the testimony of the defendant, and it may be of some significance that defendant failed to testify, on his own behalf, that he did not know or suspect the alleged mistake at the time of the execution of the lease.

2. Counsel for appellant contend that it is essential to the support of the judgment that the averments of the complaint to the effect that the plaintiff was of weak mind, that the consideration was inadequate, and that the defendant fraudulently concealed from the plaintiff a material part of the contents of the lease, or prevented her from understanding it, should have been proved and found.

The only fraud necessary to sustain the judgment is such as may be inferred from the failure of the defendant to correct the mistake of the plaintiff, known to or suspected by the former at the time of the execution of the lease. This is all that is required by section 3399 of the Civil Code. (*Higgins* v. *Parsons*, 65 Cal. 280; *Cleghorn* v. *Zumwalt*, 83 Cal. 156.)

There is nothing inconsistent with this in the law of the case as laid down on the former appeal. (*Wilson* v. *Moriarty*, 77 Cal. 596.) That appeal was from a judgment for defendant on demurrer to the original complaint, which prayed for only a rescission of the lease, and it was merely decided that the complaint was sufficient. After the cause was remitted, the plaintiff amended her prayer by asking the alternative relief of revision of the lease in case a rescission should be denied. The complaint contains several averments not essential to this alternative relief, and, among them, inadequacy of consideration and weak-mindedness of the plaintiff. If plaintiff only intended to lease her property for a term of five years, instead of twenty years, and the defendant

knew or suspected her true intention, it is quite immaterial, for the purpose of merely reforming the lease, on the ground of mistake, that the plaintiff was not weak-minded, and that the monthly rent reserved was an adequate consideration for a lease of twenty years. (*Higgins* v. *Parsons*, 65 Cal. 280; *Cleghorn* v. *Zumwalt*, 83 Cal. 156.)

For the purpose of testing the sufficiency of the findings, the case should be regarded simply as a case to reform the lease, under section 3399 of the Civil Code, on the ground of a mistake of the plaintiff, known or suspected by defendant. In this view of it, all the objections on the ground of insufficiency of the findings not heretofore considered appear to be irrevelant.

3. Appellant's counsel contend that "the code provision (Civ. Code, sec. 3399) was not framed to benefit the indifferent, or those who are grossly careless, and must be construed as requiring the exercise of at least ordinary care," and, therefore, that relief should be denied the plaintiff, on the ground of her neglect to give such ordinary attention to the reading of the lease by the notary as would have enabled her to understand its contents. In support of this point, the cases of *Hawkins* v. *Hawkins*, 50 Cal. 558, and *Metropolitan Loan Association* v. *Esche*, 75 Cal. 513, are cited. Neither of these cases is in point. The former was an action to avoid a written contract, on the ground that the plaintiff was induced to sign it by false representations of the defendants that "it was like the verbal agreement" which preceded it, and which it was intended to replace, the defendants knowing that the written contract was not like the verbal agreement; and the plaintiff, believing such representation of defendants to be true, signed the written contract without reading it, although he had full opportunity to do so. The lower court sustained a general demurrer to the complaint, and this was affirmed on appeal. The complaint made neither a case of mu-

tual mistake, nor a case of mistake of one party which the other knew or suspected. The defendants were not mistaken, and it was not alleged that they knew or suspected any mistake on the part of the plaintiff. The object of the action was to annul a contract, simply on the ground of such actual fraud as induced a mistake on the part of the plaintiff, which the defendants were not alleged to have known or suspected. So in the latter case, when the defendants by cross-complaint sought to reform the bond on which the suit was brought, on the ground of mutual mistake of the parties, it was found that there was no mistake on the part of the plaintiff; neither was there any averment, finding, or pretense that the plaintiff knew or suspected any mistake on the part of the defendants.

4. As another distinct cause of action, the plaintiff alleged that some time after the execution of the written lease, and while she was still ignorant that it was a lease for ten years, instead of five years, she was induced by defendant to add an additional story to the leased house, and to make other improvements, at a cost of thirteen thousand two hundred dollars, in addition to the improvements required by the lease; and that defendant verbally promised to pay a reasonable rent for such improvements, in addition to the rent reserved by the lease; that when these improvements were completed, on or about January, 5, 1888, the plaintiff endeavored to agree with defendant as to the increase of rent on account of said improvements, but defendant refused to agree upon or to pay any additional rent for said improvements, although the rental value of the property was thereby increased $150 per month. The prayer as to this cause of action is, that the lease " be so amended and reformed as to carry out the subsequent agreement with reference to the additional improvements put upon the premises, and to provide that the amount of monthly rental shall be increased so as to include a reasonable

rental on account of said improvements, to wit, the sum of $150 per month."

The defendant denied that he induced the plaintiff to make these additional improvements, or that he promised to pay any additional rent therefor.

The court expressly declined to find upon the issue of fact as to these improvements, "for the reason that this court considers and adjudges the same to be immaterial, and not proper matter for adjudication in this case"; and, as a conclusion of law, further said: "The court does not decide whether or not the plaintiff is entitled to recover from the defendant any additional rental for additional improvements made upon said premises by the plaintiff after the execution of said lease described in the complaint, and the court decides this case without prejudice to the rights of either plaintiff or defendant in the matter of said additional improvements."

Counsel for appellant insist that the court erred in thus disposing of this branch of the case relating to the additional improvements.

It will be observed that this branch of the case has no connection with the lease, or with the cause of action to reform the lease, as it is founded upon an alleged subsequent parol agreement to pay reasonable rent for improvements additional to those required by the written lease, and not upon any agreement or promise to reform or alter the written lease. Nor does the judgment reforming the written lease in any degree depend upon the alleged subsequent agreement as to additional improvements and rent therefor, nor upon any fact alleged or denied in relation thereto. Therefore it would not be necessary or proper to reverse the judgment reforming the written lease for any error (conceding there was error) in disposing of the distinct cause of action resting solely upon the alleged subsequent agreement. It would seem that the effect of the action of the court was a dismissal of the alleged cause of action based on the subse-

quent agreement, without prejudice to the rights of either party, for the reason that the court considered "the same to be immaterial, and not proper matter for adjudication in the case." It is not quite clear why the court so considered it. It may have been because it was thought to be improperly joined with the other cause of action, or possibly because the facts stated did not constitute a cause of action. If so, the court should have sustained defendant's demurrer on one of these grounds. But no point is made here on the overruling of the demurrer. If the plaintiff was entitled to any relief upon the alleged subsequent contract, it is clear that she was not entitled to the specific relief prayed for, viz., that the written lease "be so amended and reformed as to carry out the subsequent agreement with reference to the additional improvements"; for surely the lease could not have been amended or reformed by incorporating into it a distinct subsequent agreement. But whatever may have been the ground upon which the court based its action in substantially dismissing this branch of the case without prejudice to the parties, and whether or not it erred in so doing, I think it appears that the defendant was not thereby injured.

I therefore think the judgment and order should be affirmed.

BELCHER, C., and FOOTE, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the judgment and order are affirmed.

Hearing in Bank denied.