[S. F. No. 4667.   Department Two.—May 29, 1908.]

## HOME AND FARM COMPANY OF CALIFORNIA, Respondent, v. M. T. FREITAS, Appellant.

REFORMATION OF DEED—MUTUALITY OF MISTAKE AS TO DESCRIPTION OF LAND—SUFFICIENCY OF PROOF—CONFLICT.—In an action to reform a deed for mutuality of mistake as to the description of the land, caused by the mistake of a draughtsman carried into the deed, giving the defendant about sixteen acres more land than was contemplated by the parties, although the proof of the mistake and its mutuality must be clear and convincing, yet a mere conflict in

the evidence, does not necessitate a denial of the relief, but the court's finding of the mistake and its mutuality, upon conflicting evidence, if well supported by sufficient evidence, will not be disturbed, notwithstanding the denial of the mistake by the defendant, who is seeking to hold more than he is justly entitled to.

ID.—ERRONEOUS DESCRIPTION BY METES AND BOUNDS—EXCESS OF ACREAGE—SPECIFIC AND DIFFERENT VALUATIONS.—Though a description of land in a deed by metes and bounds conveys the legal title to all the land included therein, yet a court of equity is not precluded from reforming the deed so as to express the true intent of the parties, where there is an excess of acreage, and it is clearly shown, throughout, that the tracts and parcels of the land were not valued as a whole, but were specifically and differently valued in acreage valuation in accordance with the quality and location of the land.

ID.—SEGREGATION OF LAND ERRONEOUSLY CONVEYED — PLEADING AND PROOF.—Where the specific tract of land decreed to have been erroneously conveyed is supported by the complaint showing just what the error in the deed was, and the exact description of the land erroneously conveyed, and by the evidence clearly showing the specific acreage and its *situs,* as pleaded, the court properly decreed the reformation of the deed in relation thereto.

ID.—DEMAND FOR CORRECTION OF DEED BEFORE SUIT.—A sufficient demand for the correction of the deed before suit, is shown by a request for a correction deed, reconveying the property, made by the engineer and surveyor of the plaintiff upon the defendant, and its refusal by him, upon the ground that no mistake had been made.

APPEAL from a judgment of the Superior Court of Marin County and from an order denying a new trial. Thomas J. Lennon, Judge.

The facts are stated in the opinion of the court.

James W. Cochrane, and James C. Sims, for Appellant.

William Singer, Jr., and Guy Sharp, for Respondent.

HENSHAW, J.—This action was brought to correct and reform a deed to certain lands situate in the county of Marin, upon the ground of a mutual mistake of the parties, whereby some sixteen acres of land more than contemplated by the parties were conveyed by erroneous description. Judgment passed for plaintiff and from that judgment and from an order denying his motion for a new trial defendant appeals.

His principal contention upon the appeal is that the mistake was not mutual, that whatever may have been in the mind of the grantor, as to himself, the grantee, he received only such land as he understood he was to receive.

Plaintiff most satisfactorily established the following facts, many of them from the mouth of defendant himself, others undisputed by him: Defendant had negotiated with Mr. Chatfield, a real estate agent, for the purchase of certain of plaintiff's lands. The negotiations resulted in an agreement for the purchase and sale of the following lands, at the prices given:

| | |
|---|---|
| 140.25 acres, lot 11, division B, at $54 per acre....| $7,573.50 |
| 30 acres, hill land, division B, at $12 per acre...... | 360.00 |
| 60 acres, lot 12, division C, at $12 per acre........ | 720.00 |
| Total ................................... | $8,653.50 |

After this agreement had been entered into it was discovered by Mr. Chatfield that there had been sold to other persons part of the thirty-acre tract of hill land in division B, which reduced the acreage of that tract about half. Then, in order to make up the 171 acres in division B which Mr. Freitas desired, the surveyor was instructed to take an equivalent quantity of adjoining lands in division B. This he did, but in so doing it was necessary to substitute for the fifteen or sixteen acres of hill land at $12 per acre an equal amount of level reclaimed land valued at $54 per acre. Plaintiff then caused its deed to be prepared upon March 31st, conveying to defendant:

| | |
|---|---|
| 156.71 acres at $54, division B................... | $8,462.34 |
| 14.29 acres at $12, division B................... | 171.48 |
| 60.00 acres at $12, division C................... | 720.00 |
| Total ................................... | $9,353.82 |

While under the deed thus tendered defendant Freitas was to have received the exact amount of acreage provided for by his contract with Mr. Chatfield, the cost of the land, by reason of the substitution of fifteen acres of reclaimed land for the hill land was $700.32 more than the purchase price originally agreed upon. Upon this Mr. Freitas refused to accept the deed and pay the money, demanding title to the

land for which he had originally contracted. Plaintiff explained its inability to make conveyance because of the sale of fifteen acres of the hill land, and offered to restore the deposit paid by Freitas, which he refused to accept. Eventually, and at Mr. Freitas's demand, the matter was adjusted. In Mr. Freitas's own language, "I got to thinking the matter over, and I says, 'You got fifty-five acres of land there adjoining lot 12, division C; if you would sell me that land for twelve dollars per acre, just as I paid for the sixty acres adjoining, I would take that extra land of that survey and pay you the price, and I don't want any more difficulty about the surveys.' . . . Mr. Perkins requested me to wait a few minutes; that he would communicate with Mr. Mills again. I did so, and his reply was that Mr. Mills refused to sign such an agreement, and then I told Mr. Sims I wanted him to file a complaint compelling those people to live up to their agreement. . . . The next day Mr. Sims telephoned me that he had a message from Mr. Mills stating that rather than go to law he would let me have this land as it was surveyed off by Mr. Lepoids, and the sixty acres, and fifty-five acres of lots 12 and 13, division C, for the lump sum of ten thousand and thirteen dollars and some odd cents, according to the proposition which I made to Mr. Perkins. He wanted to know if it was satisfactory to me. I said, 'Yes, go ahead and have deeds made to that effect.' " It thus appears from the defendant's testimony that he agreed to take the following land at the following prices:

| | | |
|---|---|---|
| 156.71 acres, division B, at $54 per acre | $8,462.34 |
| 14.29 acres, division B, at $12 per acre | 171.48 |
| 60.00 acres, division C, at $12 per acre | 720.00 |
| 55.00 acres, division C, at $12 per acre | 660.00 |
| 286.00 | Total | $10,013.82 |

In accordance with this agreement a deed was prepared and executed by the Home and Farm Company to Freitas, which was accepted by him. In the map, however, which was used, and which was supposed accurately to follow the survey by Mr. Lepoids, plaintiff's engineer, a false line had been drawn, not in accordance with the surveyor's notes. The description in the deed followed the boundaries as shown upon

the map, and in so doing included some fifteen or sixteen acres more than were called for by the true survey—more than 286 acres actually purchased by defendant. This error in delineating the course, lines, and distances of the survey upon the map is clearly shown and established by a comparison between the field-notes and the map, and by the testimony of Mr. Gibbs who actually drew the map. The result was that in division B, of which division under his deed Freitas was to take 156.71 acres at $54 an acre, and 14.29 acres at $12 an acre, there was an excess over this amount of land of fifteen or sixteen acres. This is admitted by appellant. The location of the faulty line is shown also by the evidence, and thus is established the *situs* of the excess acreage. This error was soon discovered by plaintiff, and it prepared and presented to Mr. Freitas a deed for his execution, reconveying this excess land so by mistake conveyed to him. Mr. Lepoids, the engineer of plaintiff, saw Mr. Freitas and explained to him the mistake. He was referred by Mr. Freitas to Mr. Sims, his attorney. Mr. Lepoids with his map and deed went to Mr. Sims, explained the matter and offered the correction deed. The defendant's answer does not deny that he refused to correct the mistake, but expressly alleges that no mistake was made.

That the statement above given establishes a clear case of mistake is at once apparent. The only question upon this point is whether there was such mutuality in the mistake as to authorize a court of equity to correct it. But in this connection it is to be remembered, as was said by this court in *Sullivan* v. *Moorhead*, 99 Cal. 157, [33 Pac. 796], that while to justify a court of equity in decreeing the reformation of a written instrument on the ground of mistake, the proof of the mistake must be clear, convincing and satisfactory to the court, "yet a mere conflict of testimony as to the mistake does not necessitate a denial of the relief (*Hutchinson* v. *Ainsworth*, 73 Cal. 452, [2 Am. St. Rep. 823, 15 Pac. 82] ; *Wilson* v. *Moriarity*, 88 Cal. 211, [26 Pac. 85]), and the decision of the trial court upon such conflict of evidence is conclusive upon this court." The most that can be said for Freitas's position, which is to the effect that no mistake was made and that he "paid the balance of that $700.32 for the extra acreage they claimed was on lot 11, division B," is that

it is against the weight of evidence. Plaintiff was not claim-
ing extra acreage in division B. It was asking for the sub-
stitution of an equivalent acreage of greater value. It is a
mere coincidence that this substituted acreage amounted to
about fifteen acres, while the deed actually made conveyed
about fifteen acres excess. It is shown throughout that the
tracts, pieces, and parcels of land were not valued as a whole,
but were specifically and differently valued in acreage valua-
tions in accordance with the quality and location of the land.
Mr. Freitas's own testimony is that it was agreed that he was
to have the land "as it was surveyed off by Mr. Lepoids."
Mr. Lepoids's survey was correct. The error that occurred
originated in the draughtsman's mistake which was carried
into the deed. As shown by the transaction, Mr. Freitas
had never sought for nor contracted for more than 171 acres in
division B, and yet he is seeking to hold sixteen acres more
than it was ever in contemplation that he should purchase.
In emphasizing the fact that the defendant obtained more
than the exact acreage which he had contracted to purchase,
we are not unmindful of the principle that a description of
land in a deed by metes and bounds conveys the legal title
to all of the land embraced within such boundaries, regardless
of the acreage which may be specified in the deed, but never-
theless it is true that such a description does not preclude a
court of equity from reforming such a deed so as to express
the true intent of the parties. (20 Am. & Eng. Ency. of
Law, 2d ed., 826; *Kocher* v. *Hayford,* 59 Cal. 316; *Stevens*
v. *Holman,* 112 Cal. 345, [53 Am. St. Rep. 216, 44 Pac. 670] ;
*Capelli* v. *Dondero,* 123 Cal. 324, [55 Pac. 1057].) The
court's finding of the mistake and of its mutuality is well
supported and will not be disturbed. Where a defendant in
such an action is seeking to hold more than he is justly en-
titled to, and where the very issue in the action is the
mutuality of the mistake, the trial court is compelled to de-
cide upon conflicting evidence, and if a mere denial of the
defendant that he was mistaken is to suffice, it must result
in every case that where such denial is made the plaintiff
must fail of relief. Such, as has been above shown, however,
is not the law.

As to the further propositions advanced by defendant—
the one that a demand for reformation was necessary before

action commenced (*Black* v. *Stone,* 33 Ala. 327; *Brainerd* v. *Arnold,* 27 Conn. 617), it is sufficient to say, as pointed out above, that a request for a correction deed reconveying the property was made by the engineer and surveyor of plaintiff upon defendant, by defendant referred to his attorney, and by both refused, as appears by the answer, upon the ground that no mistake had been made. As to the final proposition advanced, that the court in reforming and correcting the deed erred in segregating the specific tract of land which it decreed had been erroneously conveyed, it is made apparent by the pleading just what the error in the deed was and the exact description of the land erroneously conveyed. These allegations of the complaint are abundantly supported by the evidence, so that the specific acreage and its *situs* were clearly shown. It was this acreage as to which the court decreed a reformation of the deed.

The judgment and order appealed from are, therefore, affirmed.

Lorigan, J., and McFarland, J., concurred.