[Civ. No. 8573. First Appellate District, Division One.—December 23, 1932.]

OAKDALE MERCANTILE COMPANY (a Corporation), Respondent, v. ALBERT BAER, Appellant.

Jefferson E. Peyser for Appellant.

D. J. O'Brien and Langton A. Madden for Respondent.

THE COURT.—Plaintiff brought this action to recover the sum of $3,511.15 alleged to be owing to it by defendant under an agreement entered into between them. This agreement is set forth in the complaint. Defendant answered the complaint, denying any indebtedness to plaintiff and filed a cross-complaint in which he sought to reform said agreement. Judgment was rendered for plaintiff for $3,250, and denying the relief prayed for by the cross-complaint for said reformation. Defendant filed a motion for a new trial, which the court failed to pass upon within sixty days after its filing, and therefore said motion is deemed denied. From this judgment defendant appeals.

The only question presented on this appeal is whether or not the trial court erred in its refusal to reform the said agreement.

The facts in substance are as follows: Respondent owned a stock of merchandise located at Oakdale, California, which it was desirous of liquidating. The appellant's place of business was located in San Francisco, and his business consisted of buying out stocks of merchandise of stores and liquidating same, and he had been engaged in that business for the past thirty years. Some time in the latter part of February, 1927, appellant was recommended to respondent as a suitable person to dispose of said merchandise, and thereupon A. E. Schadlich, respondent's vice-president, called upon him and began negotiations relative to securing his services. On March 1, 1927, an agreement for the liquidation of said merchandise was agreed upon and appellant stated that he would have his attorney reduce it to writing and send it to respondent. On March 3, 1927, the written agreement was sent to respondent, which was received by F. B. Pattee, the manager of respondent's store. The agreement as drawn was not entirely satisfactory to Pattee and he sent it back to appellant, suggesting some minor changes. These changes were made and the agreement was returned to respondent on March 5, 1927, and was immediately executed by respondent and returned to appellant for his signature thereto. Upon receipt of said agreement appellant also signed it.

This agreement provided that respondent should sell and convey to appellant the said stock of merchandise for a sum equal to fifty per cent of its inventory value; that appellant should proceed with the sale of said stock at respondent's store in Oakdale for a period of ninety days, with an extension of thirty days if necessary, and then remove the unsold merchandise to appellant's place of business in San Francisco and dispose of the remaining stock at auction; that at his discretion appellant could add additional merchandise to said stock, the cost thereof to be charged against said stock. The said agreement also contained the following provision: "It is further mutually understood and agreed by and between the parties hereto that the net proceeds of such sale which net amount shall be the difference between the

gross sales and the expenses incurred in and about conducting said sale, which said expenditures shall be made at the sole discretion of the party of the second part, shall be divided between the parties hereto in equal proportions, in other words Fifty (50%) per cent of such net proceeds shall be paid by the party of the second part to the party of the first part. Such payments shall be made at the conclusion of said sale and when a final accounting and settlement has been made as hereinafter provided for." While the agreement purports to convey the entire stock to appellant, respondent retained a one-half interest in the net proceeds thereof.

At the date of entering into said agreement, appellant paid to respondent fifty per cent of the inventoried value of said stock, namely, $8,640. The gross receipts from said stock in Oakdale amounted to the sum of $9,405.10, and the gross receipts from sales in San Francisco amounted to $6,435.53, making the total of gross receipts the sum of $15,840.63. The expenses attending said sale amounted to $3,053.44, and the merchandise furnished by appellant while conducting same amounted to $5,764.89. Appellant contends that the $8,640 paid respondent by him was a part of the expenses attending said sale, and should also be deducted from the gross receipts; that it was mutually understood between said parties that this sum so paid to respondent should be deemed a part of the expenses of said sale incurred in conducting same and deducted from the gross receipts; that the intention of both parties to said agreement was to have inserted therein a provision that the $8,640 was to be deemed a part of the expenses incurred in said sale of stock and was so mutually understood by them, but that by mistake this provision was omitted from the agreement.

The grounds which will justify the reformation of a written contract are: 1. Fraud; 2. Mutual mistake of the parties; 3. A mistake of one party which the other at the time knew or suspected. (Civ. Code, sec. 3399.) There is no evidence tending to establish fraud; and upon the question of mistake as claimed by appellant there is a direct conflict.

The trial court found that the said agreement was not executed by reason of fraud on the part of respondent, or

by mutual mistake of said parties, or by the mistake of the appellant which respondent knew or suspected at the time said agreement was made and entered into.

This finding is supported by the testimony of Schadlich, respondent's vice-president, and by Pattee, the manager of its store. Pattee testified that at the meeting when the agreement was made, he and Schadlich and appellant and one Sol Charmak were present; that appellant offered three propositions for the disposition of said stock; that is to say, that he would sell it on commission, or buy the stock outright, or he would pay respondent for one-half of its value, this money so paid to belong to respondent absolutely, no matter what the outcome of the sale should be, respondent to receive one-half of the net proceeds resulting from the sale of the stock, less the expenses incurred in making same. This latter proposition was accepted. Appellant then stated that he would have this agreement written out and send it to them. This testimony was corroborated by Schadlich.

Where a contract is sought to be reformed for mistake, the evidence of mistake must be clear and convincing, and every presumption favors the view that a written instrument, deliberately executed, expresses the true intent and meaning of the parties. (*Burt* v. *Los Angeles Olive Growers Assn.,* 175 Cal. 668 [166 Pac. 993].) A written contract supersedes all oral negotiations which preceded or accompanied the execution of the instrument (Civ. Code, sec. 1625), and it must be presumed in the absence of fraud or mistake that the entire negotiations of the parties are included in the contract executed. (6 Cal. Jur. 262.) There is substantial evidence in support of the finding of the court that the said agreement was not executed by mutual mistake or by the mistake of the appellant which respondent knew or suspected at the time the said agreement was entered into, and such being the case this finding of the court is conclusive on appeal. (*Wilbur* v. *Wilbur,* 197 Cal. 1 [239 Pac. 332] ; 2 Cal. Jur. 921.)

Appellant produced evidence of a custom prevailing in the business in which he was engaged to the effect that the cost of the merchandise was deemed a part of the expense of its sale and should be deducted from the gross sales. In *Andrews* v. *Waldo,* 205 Cal. 764, 770 [272 Pac.

1052, 1055], the court said: " . . . parties who contract as to a subject matter concerning which known usages prevail, incorporate such usages into their agreements by implication. (*Luckehe* v. *First Nat. Bank of Marysville*, 193 Cal. 184 [223 Pac. 547]; *Brown* v. *Central Land Co.*, 42 Cal. 257, 260; 25 Cal. Jur., p. 420.) But by express code provision stipulations which are necessary to make a contract conformable to usage are implied only in respect to matters concerning which the contract manifests no contrary intention. (Sec. 1655, Civ. Code.) In other words, where the known usage and the contract are in conflict the contract prevails." Where the contract is certain in its terms it cannot be varied by parol proof of a custom. (*Withers* v. *Moore*, 140 Cal. 591 [74 Pac. 159]; *Rasmussen* v. *Pacific Fruit Exchange*, 111 Cal. App. 346 [295 Pac. 538].) In the instant case the contract provides in no uncertain terms that the respondent should receive one-half of the net proceeds resulting from the sale of said stock; that said net proceeds should be determined by deducting from the gross sales the expenses incurred in making the said sale and the value of the merchandise furnished by appellant in aid of the sale of said stock.

The judgment is affirmed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on January 21, 1933.