[Civ. No. 13973.   Second Dist., Div. Two.   May 21, 1943.]

A. D. TAFF, Appellant, v. ATLAS ASSURANCE COMPANY, LTD. (a Corporation) et al., Respondents.

William M. Samuels and Jack R. Kates for Appellant.

Chase, Barnes & Chase and Daniel P. Bryant for Respondents.

MOORE, P. J.—Plaintiff appeals from an adverse judgment upon his action for the revision of an insurance policy and for a recovery thereon. The complaint contains three counts respectively: (1) Mutual mistake of the parties; (2) the mistake of plaintiff known to or suspected by defendant; and (3) the fraud of defendant. The particular feature of the policy which plaintiff sought to eliminate was a restriction upon the coverage contained in item I of the exclusion clauses which reads as follows: "Loss of or damage to property insured hereunder whilst in or upon any automobile, motor cycle, or any other vehicles unless, at the time the loss occurs, there is actually in or upon such vehicle, the assured or a permanent employee of the assured or a person whose sole duty it is to attend the vehicle; this exclusion shall not apply to property in the custody of a common carrier covered hereunder, or in the custody of the post office department as first class registered mail." Preceding the exclusion clauses the policy contained the following: "This policy covers loss of and or damage to the above designated property or any part thereof arising from any cause whatsoever except as hereinafter mentioned, viz.: . . . ."

The answer denied that the policy failed to conform with the agreement for the purchase of the policy; denied that there was any mistake or fraud.

Plaintiff made an application through R. A. Rowan and Company as agents for defendant Atlas Assurance Company, Limited, hereinafter referred to as Atlas, for a "Jeweler's Block Policy," in the amount of $10,000. He was definite and positive as to the particular type of policy preferred. He was told by the agents that the policy he asked for afforded the broadest coverage available and at a lesser premium than the interior and messenger holdup policy and that it was designed to take care of the custom of the jeweler's trade.

Such policy was issued to him effective as of January 1, 1937. It was renewed annually till 1941. Having suffered a loss in May of the latter year, upon the rejection of his claim in the sum of $10,000, he instituted this action for reformation and for the amount of his damage. He based his action upon the claim that he purchased his policy by reason of his reliance upon the statements of the agents of the insurer that the Jeweler's Block Policy would afford him protection "under any and all circumstances." Such, also, was his testimony. The agents who had at first dealt with him testified that no request was made for an all-inclusive coverage.

The court found in accordance with the evidence offered by defendants and the proof abundantly supports the finding. In plaintiff's written application for his first policy which became effective January 1, 1937, he stated that when traveling, his merchandise was carried in a special grip and when in strange cities it was put in the safe-deposit vaults of hotels. In subsequent renewals of his policy the same statement appeared in his applications. He testified that there was nothing to prevent his reading any of the five policies received from Atlas; that it was the duty of his secretary to examine the policy; that she is a part of his business; that he did not do anything without her. Moreover, on the face of the first policy, issued January 1, 1937, there was stamped the following: "The assured is requested to read his policy and if incorrect to return it immediately for alteration." Each year he received the same type of policy—identical in every respect except as to the date and term. Each and all of the five policies contained the same exclusion clauses A to M, including I, quoted above. When he applied for the policy he had been a jeweler for 18 years at first in New York City, later in Los Angeles. It will thus be seen that plaintiff, a business man of long experience received what he ordered; had it renewed four times; had in his possession five successive identical policies on the front page of each of which was the exclusion clause "I." During the five years mentioned he never once returned a policy for correction. He did not say at his first conference with the agents that he desired coverage for negligence in leaving his sample case in his automobile unattended. The court below found that there was no mutual mistake of the parties and that defendants did not suspect that plaintiff was under the misapprehension that his coverage would include loss under any circumstance; also

that there was no fraud. Despite such findings, plaintiff contends that the court committed error in its ultimate determination of the facts. In other words we are to determine whether the evidence supports the findings of the trial court.

■ (1) In order to justify a decree revising a written contract for mistake, the facts necessarily must be proved by clear and convincing evidence. A mere preponderance is insufficient (Restatement of Law of Contracts, sec. 511.) Although a court may reform a written instrument on the ground of mistake, yet the proof of such mistake must be clear, convincing, and satisfactory to the court. The decision of the trial court upon a conflict of evidence with reference to such mistake is conclusive upon the appellate court. (*Sullivan* v. *Moorhead*, 99 Cal. 157 [33 P. 796]; *Oakdale Mercantile Co.* v. *Baer*, 128 Cal.App. 350 [17 P.2d 779].)

The authorities cited by plaintiff (*Wilson* v. *Moriarty*, 88 Cal. 207 [26 P. 85]; *Cleghorn* v. *Zumwalt*, 83 Cal. 155 [23 P. 294]; *Higgins* v. *Parsons*, 65 Cal. 280 [3 P. 881]) are not in point. In the Wilson case, plaintiff was a woman unable to read or write. In the Cleghorn case it was the admitted mistake on the part of both parties. In the Higgins case it was found that the defendant knew that the writing did not contain the stipulation at first agreed upon, to wit: That defendant should pay interest at the rate of 1 per cent a month, but that he knew that it contained a provision that he should pay interest at the rate of 1 per cent per annum. Emphatically, such authorities do not support plaintiff's contention. His business was one of intense competition, and he was seeking insurance of a specific kind having to do with his particular trade. It will thus be seen that the character and experience of plaintiff afforded the trial court additional support for its determination that the plaintiff was not the victim of fraudulent representations. If he had in mind a policy that would insure his jewelry under any conceivable situation, a business man of ordinary prudence surely would at some time within five years look to see whether he was secure in such coverage.

■ In his zeal to upset the findings of the trial court, plaintiff has placed no value upon the testimony offered on behalf of defendants which was the basis of the court's findings. In case of a mere conflict of evidence the trial court is under no inhibition to accept or reject the testimony of either side. It is governed solely by the conscientious and

zealous purpose of the judge to ascertain the truth and to record the facts as he may determine. Moreover, even though it had been established by the evidence that all parties understood that plaintiff was seeking insurance that would protect him while traveling by automobile, to points remote from Los Angeles, the trial court was not for that reason required to find that the understanding was that the policy would extend to a situation where plaintiff might leave his jewelry case in his unguarded automobile contrary to his practice as declared in his repetitious application, namely, that he carried his jewelry in a special grip and left it in safe-deposit vaults at night.

In support of his claim that he was the victim of a fraud perpetrated by defendants, plaintiff cites: *Glickman* v. *New York Life Ins. Co.*, 16 Cal.2d 626 [107 P.2d 252, 131 A.L.R. 1292] ; *Golden Gate Motor Transport Co.* v. *Great American Indemnity Co.*, 6 Cal.2d 439 [58 P.2d 374]. These authorities are not apropos. The agent of the New York Life gave advice to Glickman who was disabled and unable to pay premiums past due. It was held that the agent was under a duty to make no misleading statements with reference to the continuance of a policy. In the second case the Motor Transport Company having sold a Hudson Sedan to one Paul Colburn requested that the Colburn car be included in a nonownership policy. Such request was emphasized to the agent who sold the policy which did contain Colburn's name. There was no written application. The holding of that case in substance is : Where the parties first agree with reference to the coverage of a particular chattel and the premium is paid for such coverage, the insurer is held bound to give the protection contracted for, notwithstanding the failure of the insurer to include in the policy issued a description of such covered chattel. The finding of the trial court was supported by the evidence.

Plaintiff sought the greatest amount of protection for his merchandise. If he should not leave his jewelry in his unguarded car exposed to the hazards of theft, accident and fire, his coverage was complete ; but if he did choose so to leave it, he had got what he bought. There was no reason why defendants would suspect plaintiff to be ignorant of the "I" clause. Its presence was the correlative of his declaration as to the manner of caring for his attractive property. The insurer was not required to furnish absolute coverage. Plaintiff's appli-

cation did not suggest it. Neither did he make request for it at the first conference as the court below determined.

(2) But whatever may be said as to the testimony with reference to plaintiff's expressed wishes at his first conference with the agents he received his policy which became effective January 1, 1937, and presumably was satisfied with its coverage. Not only did ordinary prudence require that he examine it to see that it was the policy he had intended to purchase but in bold letters on the very face of it he was admonished to read and return it for correction. The exclusion clause which he now desires to have stricken because he did not know that it was in the first policy appeared on the front page in bold type. A casual reading would have detected it then or on his receipt of any of his policies for the four succeeding years.

While the mere failure to read a policy does not in itself necessarily prohibit a revision of the contract, yet such failure on the part of the policyholder is a circumstance to be considered by the court on the question of his negligence. So, also, are the experience and intelligence of plaintiff factors to prove his neglect. Unless the policyholder making such excuse gives a satisfactory explanation of his failure to read it, the trial court may be justified in rejecting his excuse and in denying the reformation. The court is not bound to accept just any excuse offered by the holder of a policy seeking a reformation of its provisions for his failure to read it at the time he received it. (*California Trust Co.* v. *Cohn,* 9 Cal. App.2d 33 [48 P.2d 744].) A contract having been deliberately executed is presumed correctly to express the intention of the parties. (*Welk* v. *Conner,* 102 Cal.App. 286, 289 [282 P. 963].) The burden of overcoming such presumption rests upon him who seeks to avoid its plain terms by clear and convincing evidence. (*California Trust Co.* v. *Cohn, supra,* p. 40.) The reformation of a policy on the ground of mistake without the exercise of reasonable care on the part of the insured is not to be encouraged. (*Fraters Glass & Paint Co.* v. *Southwestern Construction Co.,* 107 Cal.App. 1, 5 [290 P. 45].) In order to be relieved of the result of his failure to read his policy the insured must have exercised that degree of care ordinarily exercised by a reasonably prudent person under the same circumstances. Otherwise equity will not relieve against it. (4 R.C.L. 507, sec. 20.) If the trial court should de-

termine that the excuse offered by the insured is not a satisfactory explanation of his failure to read the policy, he is not relieved from the consequences of his neglect of a legal duty within the meaning of section 1577 of the Civil Code. (*Nelson v. Meadville*, 19 Cal.App.2d 68, 70 [64 P.2d 1116].) ■ It is a general rule that the receipt of a policy and its acceptance by the insured without an objection binds the insured as well as the insurer and he cannot thereafter complain that he did not read it or know its terms. It is a duty of the insured to read his policy. (14 Cal.Jur. 427.) By accepting and retaining five successive policies insuring against loss or damage to merchandise, identical in their conditions and restrictions, the policyholder is bound by its terms and in a suit for its reformation his plea that he did not read it is unavailing. (*Kahn* v. *Royal Indemnity Co.*, 39 Cal.App. 180 [178 P. 331] ; *Madsen* v. *Maryland Casualty Co.*, 168 Cal. 204, 206 [142 P. 51].)

■ Where the insured alleges as a fact that the defendant did not issue a policy covering the particular risk which he claims to have specified, he must in an action for revision allege more than the neglect of the insurer to cover such risk and his own demand for such coverage. If the insurer does not grant the coverage applied for, the insured may reject the policy. However, the mere failure to issue the policy requested does not necessarily constitute fraud or actionable mistake. It must be alleged that defendant knew or should have known that plaintiff would not examine the policy or that defendant took affirmative action to prevent such examination. (*Bank of Fruitvale* v. *Fidelity & Casualty Co.*, 35 Cal.App. 666, 670 [170 P.852].)

The judgment is affirmed.

Wood, (W. J.), J., and McComb, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 19, 1943.