[Civ. No. 28614.   Second Dist., Div. Four.   Sept. 15, 1966.]

LESTER M. LAING et al., Plaintiffs and Respondents, v. OCCIDENTAL LIFE INSURANCE COMPANY OF CALIFORNIA, Defendant and Appellant.

Gibson, Dunn & Crutcher and John L. Endicott for Defendant and Appellant.

Dryden, Harrington, Horgan & Swartz and Vernon G. Foster for Plaintiffs and Respondents.

KINGSLEY, J.—This is an appeal by Occidental Life Insurance Company of California from a judgment on a group major medical expense insurance policy. Plaintiff Lester Laing sued for cash benefits under the policy as written and, alternatively, to reform the policy by deleting from it two exclusionary provisions which Occidental contended prevented recovery.[1] The first cause of action—which was based on the policy as written—was tried by jury, and a finding was made for the plaintiff. A special interrogatory was submitted to the jury relating to the reformation count; the matter was tried by the trial judge who also entered judgment in favor of plaintiff on that issue.

Plaintiff Laing and Hank Thibodeau, originally as partners and later as a corporation (La Deau Manufacturing Company), engaged in the manufacture of continuous hinges, with Thibodeau primarily concerned with administration and sales, and with Laing concerned with managing the plant. Walter Norris, and later Ray Needham, employees of Quisenberry Insurance Agency, negotiated with the La Deau Manufacturing Company on group insurance; these negotiations resulted in La Deau obtaining from Cal-Western Insurance Co. a group policy. Thibodeau and Laing were later told by a Quisenberry representative that they had double coverage and could collect under one policy only. As a result, Thibodeau and Laing dropped coverage for themselves under the corporation's workmen's compensation policy. After dissatisfaction arose over the extent of financial protection on the Cal-Western policy, Needham arranged a conference in the La Deau office with a representative of Occidental Life Insurance Company of California to discuss substituting a new group policy. Needham, Laing, Thibodeau and the Occidental representative were present. Needham knew that the workmen's compensation policy did not cover Thibodeau and Laing and advised the Occidental representative of that fact. Needham testified:

"A. Well, I explained to him that there was no coverage

---

[1]The count for a money judgment was brought by plaintiff Laing alone; the count for reformation was brought in the names of both Laing and the corporation; the judgment for money runs in favor of Laing, that for reformation would inure to the benefit of both plaintiffs. It is conceded that no claim exists under the policy, either as written or as reformed, other than that of plaintiff Laing and that the corporate plaintiff seeks no relief other than that accruing to Laing. Under these circumstances, for convenience, we refer to plaintiff Laing as though he were the sole plaintiff and the sole successful party in the trial court.

provided under the workman's compensation policy, and that we wanted to know whether or not Mr. Thibodeau and Mr. Laing, if they participated in this group policy, would be covered.

"Q. And what did he tell you in that respect?

"A. To the best of my recollection, he said: 'If they don't collect under work—can't collect under workman's compensation or don't collect under workman's compensation, they will be covered by this policy.'

. . . . . . . . . . . . . .

"A. . . . 'If they can't collect any money under a workman's compensation policy, they will collect under this policy.'"

The application was signed and premiums were paid as required.

On the day of the accident, which was normally a working day for Laing, Laing planned to take the day off to attend a World Series game (for which tickets had already been obtained) with Thibodeau, and a Mr. Ainsworth, a social friend. Because of the convenient central location, the three men decided to meet at the plant, then go to lunch in the Chinese section of town, and proceed to the ball game. Laing arrived at the plant at 10 a.m., in sport clothes and without any plans to work; he wandered around the building and then the parking lot. During the preceding weeks Laing had engaged an independent contractor, Nicholas Electric Company, to install a new air-compressor unit. Maurice Dube, an employee of La Deau, was made available by La Deau to help Beck, an employee of Nicholas Electric. Shortly before the accident, Laing saw Dube working on the project, feeding wire into a conduit, and asked him how it was going; Dube replied "slow." Laing saw that Beck was having trouble and Laing asked him if he could use a hand. Beck accepted the offer and Laing climbed on the roof; as they began to pull on the wire, something gave way and both men fell to the ground. As a result, Laing was permanently paralyzed in the lower torso.

The policy had several exclusions, including the following: ". . . no Medical Expense Benefits shall be payable for or on account of: . . . (4) Any bodily injury or sickness for which the person on whom claim is presented has or had a right to compensation under any workmen's compensation or occupational disease law, or (5) Any bodily injury or sickness which arises from or is sustained in the course of any occupation or employment for compensation, profit or gain, . . ."

Defendant contends: (1) that the exclusions under (4) and

(5) of the policy apply to plaintiff Laing and that he is not entitled to benefits under the policy because he was acting in the scope of his employment; and (2) that plaintiff is not entitled to reformation because he is barred by the statute of limitations and by laches.

I

Defendant's first argument (that is that the exclusionary provisions of the policy relating to injuries incurred in the scope of employment bar Laing from recovery) is well taken. Laing, in his capacity of plant manager, had charge over foremen in the plant, had the duty of overseeing and arranging for repairs and alterations of the equipment on the premises, and from time to time did repair work himself on the premises. Also, Laing had arranged with Nicholas Electric to do the repair work in question. Laing occasionally worked nights and Saturdays without overtime pay and without adjustments in his salary for the hours he worked. These facts clearly indicate that the injury arose out of and in the course of the employment of Laing such that the exclusionary items apply.[2] It can be unequivocally stated that Laing's action, in helping the electrician make a repair, was in furtherance of La Deau's business and in furtherance of his own duties, in this situation where Laing generally supervised repairs and occasionally did repair work himself.

It has been held that where injury occurs outside of regular working hours, and where the employee is not manipulating the tools of his own calling when the injury occurred, and where the injured person is rendering reasonably needed assistance to a coworker at the time of the accident, the injured is entitled to recovery under the Workmen's Compensation Act, if at the time of the accident he is engaged in some activity or conduct reasonably attributable to the employment or properly incidental thereto. (*Scott* v. *Pacific Coast Borax Co.* (1956) 140 Cal.App.2d 173 [294 P.2d 1039].)

Plaintiff's attempts to distinguish the *Scott* case are futile. Plaintiff argues that, in the *Scott* case: "1. The service being performed was a simple one which he would reasonably have been expected to render a fellow employee as a regular incidence of his duties as a gasoline station attendant; 2. The service was performed at the request of the employee then in charge, and was calculated to advance the employer's inter-

---

[2]Section 3600 of the Labor Code makes La Deau liable to Laing for the workmen's compensation provided by Division 4 where the injury arises out of the course of the employment.

ests; 3. The performance of the service would facilitate plaintiff's own employment on the following day since he would have to use the pump. (See: 140 Cal.App.2d 181-182.)''

These factors do not sufficiently distinguish the two cases. ■ In the instant case, as one in charge of repairs, Laing might reasonably be expected to render assistance occasionally in making those repairs; the repairs were calculated to advance the employer's interest, and the service done for Beck would certainly ''facilitate plaintiff's own employment'' where Laing himself was responsible for supervising the activities done. (That Nicholas was an independent contractor instead of a fellow employee is a ''difference,'' but it is a difference without any significance in the case at bench.)

Other cases have held that acts in furtherance of the employer's business done outside regular working hours (*Griffin* v. *Industrial Acc. Com.* (1937) 19 Cal.App.2d 727 [66 P.2d 176]), and while combining those acts with purely personal acts that have nothing to do with the employment (*Wiseman* v. *Industrial Acc. Com.* (1956) 46 Cal.2d 570 [297 P.2d 649]), do not preclude an employee from recovery under workmen's compensation.

Further support for the conclusion that Laing was acting in the course of his employment, within the meaning of exclusion (5), may be found in *J. J. Newberry Co.* v. *Continental Cas. Co.* (1964) 229 Cal.App.2d 728 [40 Cal.Rptr. 509]. In that case, the manager of plaintiff's store, in violation of orders, returned to the store after it had closed for the day, in order to make a personal phone call over the employer's phone. He saw a light in a stockroom, investigated, and was attacked by burglars who then escaped with their loot. The store owner sued to recover under a policy against robbery, which policy applied only if a custodian in the store's employ was a victim. The court held that, in spite of the manager's violation of a specific order and the fact that he came to the premises for personal purposes only, his act of investigating the light was done in the scope of his employment and in a custodial capacity. Here Laing was not on the premises in violation of any company rule or policy and, as we have seen he, like the manager in *Newberry,* was at the particular place of the episode involved for a company and not a purely personal purpose. ■ The fact that he was on his way to a baseball game, and had not originally planned to conduct business, is immaterial; when he undertook to assist in pulling the wire, he was doing so in his capacity as an employee of the corporation and for its benefit.

Plaintiff correctly argues that all activities which occur on employer's premises do not "arise out of" the employment, but this generality does not aid plaintiff's case. In the *Robbins* v. *Yellow Cab Co.* case (1948) 85 Cal.App.2d 811 [193 P.2d 956], plaintiff was injured after working hours in a different department while obtaining her husband's pay check. However, the plaintiff in the *Robbins* case was doing nothing in behalf of her employer, while the plaintiff Laing in the instant case was helping make a repair. So too, in *State Dept. of Institutions* v. *Industrial Acc. Com.* (1941) 46 Cal.App.2d 439 [116 P.2d 79], (cited by plaintiff) the employee was not permitted to recover workmen's compensation benefits where she was injured while returning to the building of employment solely for the purpose of ascertaining the cause of her co-employee's delay in leaving the building. Here, again, the plaintiff was not aiding her employer and therefore that case is not comparable to the Laing situation.

In *Williamson* v. *Industrial Acc. Com.* (1918) 177 Cal. 715 [171 P. 797], a chambermaid voluntarily cleaned out a light well in the building, a job which was assigned to the male janitor. The court in the *Williamson* case emphasized that this was a hazardous act which no employer could reasonably expect a woman to do, and therefore it was out of the course of employment.[3] In the case at bench we state again that Laing was in charge of the repairs, and therefore these two cases are not analogous. In *San Francisco & Sacramento Ry. Co.* v. *Industrial Acc. Com.* (1927) 201 Cal. 597 [258 P. 86], the injured employee actually was violating the employer's instructions, and in *R. Sherer & Co.* v. *Industrial Acc. Com.* (1917) 175 Cal. 615 [166 P. 318], a watchman left the piece of equipment of which he was in charge to perform services on another piece of equipment of which another watchman was in charge. The cases cited by plaintiff are, for the reasons detailed above, not analogous to the case at hand and do not aid the plaintiff's cause.

## II

Plaintiff claims that the judgment supporting the reformation of the policy is supported by substantial evidence.

---

[3] *Williamson* is, in any event, of doubtful value to plaintiff; see *Joshua Hendy Iron Works* v. *Industrial Acc. Com.* (1946) 74 Cal.App.2d 191, 198 [168 P.2d 203], where the court said: "... the holding in the Williamson case should be limited to its precise facts, particularly in view of the earlier court's own language that the case was decided in 'the formative period of the law relating to industrial accident cases,' and 'must be decided upon its own peculiar state of facts.'"

Defendant argues that Laing's failure to read his policy was inexcusable neglect and not mistake. It is true that some cases have held that the insured has a duty to read his life insurance policy. (*Telford* v. *New York Life Ins. Co.* (1937) 9 Cal.2d 103, 107 [69 P.2d 835] ; *Layton* v. *New York Life Ins. Co.* (1921) 55 Cal.App. 202 [202 P. 958].) The case most closely supporting defendant's view in this matter is *Taff* v. *Atlas Assur. Co.* (1943) 58 Cal.App.2d 696, 700-702 [137 P.2d 483]. In that case, the plaintiff jeweler obtained a policy of insurance which contained an exclusion clause excluding loss from an unoccupied and unguarded motor vehicle. Plaintiff contended that the agent promised the policy would protect him under any and all circumstances. In sustaining a judgment against the insured, the court said (at page 700) : "If he [the insured] had in mind a policy that would insure his jewelry under any conceivable situation, a business man of ordinary prudence surely would at some time within five years look to see whether he was secure in such coverage."

The court concluded its analysis of the problem with these rules (pp. 702-703) : "While the mere failure to read a policy does not in itself necessarily prohibit a revision of the contract, yet such failure on the part of the policyholder is a circumstance to be considered by the court on the question of his negligence. So, also, are the experience and intelligence of plaintiff factors to prove his neglect. Unless the policyholder making such excuse gives a satisfactory explanation of his failure to read it, the trial court may be justified in rejecting his excuse and in denying the reformation. The court is not bound to accept just any excuse offered by the holder of a policy seeking a reformation of its provisions for his failure to read it at the time he received it. [Citation.] A contract having been deliberately executed is presumed correctly to express the intention of the parties. [Citation.] The burden of overcoming such presumption rests upon him who seeks to avoid its plain terms by clear and convincing evidence. [Citation.] The reformation of a policy on the ground of mistake without the exercise of reasonable care on the part of the insured is not to be encouraged. [Citation.] In order to be relieved of the result of his failure to read his policy the insured must have exercised that degree of care ordinarily exercised by a reasonably prudent person under the same circumstances. Otherwise equity will not relieve against it. [Citation.] If the trial court should determine that the excuse offered by the insured is not a satisfactory explanation of his failure to read the policy, he is not relieved from the conse-

quences of his neglect of a legal duty within the meaning of section 1577 of the Civil Code.''

However, the *Taff* case does not hold that the insured's failure to read his policy was, as a matter of law, a bar to reformation, but as the above quotation discloses, merely that such failure is ''a circumstance to be considered'' and that such a circumstance supports a finding that the insured did not make an excusable mistake. Nor, as defendant's brief concedes, does *Taff* hold that a failure to read is a fact to be considered by itself and without reference to the other circumstances of the particular case. In *Taff*, there was printed, on the first page in bold letters an admonition to read the policy and return it for correction, and the exclusion clause in the *Taff* case appeared on the first page of the policy in bold type. This made the insured's duty to read the policy a stronger duty than exists here, where the exclusion clause was in regular print not on the first page, and there was no equivalent warning to read the policy and return for corrections.

Furthermore, many cases have held that the presumption that persons are familiar with the terms of written contracts are not strictly applied to insurance contracts. (*Raulet* v. *Northwestern Nat. Ins. Co.* (1910) 157 Cal. 213 [107 P. 292] ; *Eagle Indem. Co.* v. *Industrial Acc. Com.* (1949) 92 Cal.App. 2d 222 [206 P.2d 877].) ▉ An insured has the right to rely on the presumption that the policy he receives is in accordance with his application; and his failure to read it will not relieve the insurer or its agent from the duty of so writing it. (*Mercer Casualty Co.* v. *Lewis* (1940) 41 Cal.App.2d 918 [108 P.2d 65] ; also *Ames* v. *Employers Casualty Co.* (1936) 16 Cal.App.2d 255 [60 P.2d 347].) Therefore, Laing's failure to read the policy is not such a neglect of duty as to create an absolute bar.

▉ The record discloses two matters, each of which affords some reasonable excuse for the failure to read the policy and discover the lack of coverage.

First: The jury found, in answer to a special interrogatory, and the trial court's findings concurred, that a representative of defendant had represented that Laing would receive benefits under the policy herein involved unless he received benefits under workmen's compensation. Having applied for this policy, on that express representation, Laing was entitled, under the cases above cited, to rely on the company's duty to provide a policy as applied for.

Second: It is clear from an examination of the policy that, while the exclusion herein involved is, in fact, contained therein, it is not obvious nor patent. It is not without significance that, when defendant's witness Nickels, in charge of its group insurance office, was asked on the stand to point out the exclusionary language, he had difficulty in finding it and actually made two false starts on that endeavor. Two businessmen, admittedly without sophistication in matters of insurance, certainly were not required to be more alert nor better readers.

We cannot say that the trial court was without evidentiary support in finding that plaintiff Laing was entitled to rely on the company's representation that it had provided him with the coverage he had requested and for which he and his employer thought they were paying.

### III

▮ Defendant claims that reformation is barred by sections 338 and 339 of the Code of Civil Procedure, which lay down a three-year statute of limitations in actions for reformation, since the action for reformation (introduced by the first amended complaint) was not instituted until November 21, 1961, over five years after the policy was issued and delivered.

The statute, however, does not begin to run until the mistake is discovered, or until the plaintiff, by reasonable diligence could and should have discovered it. (*Bradbury* v. *Higginson* (1914) 167 Cal. 553 [140 P. 254].) Admittedly, the mistake was not discovered until after the injury, when the company denied liability—a date well within the statutory period. The reasons above discussed are the answer to the contention that it should have been discovered at an earlier date.

### IV

▮ Defendant argues also that plaintiff's action for reformation is barred by laches. The contention is that, pursuant to its established program of record keeping and destruction, it had destroyed certain records, including that portion of the file on the policy herein involved which would have shown which of its employees had participated in the sale of the policy and might, therefore, have been able to testify as to the truth or falsity of the claimed conversation between plaintiff, Needham and an Occidental agent on the matter of coverage. But, apart from the question (which we need not here

decide) of whether the company could rely on delay which, as above discussed, was due to its own fault, the claim lacks factual basis. ■ The party seeking to invoke the defense of laches must show not only delay but prejudice proximately caused by that delay. (*Vesper* v. *Forest Lawn Cemetery Assn.* (1937) 20 Cal.App.2d 157 [57 P.2d 368].) There is here no showing that the company's records still extant do not still show the names of its sales force on the date in question; simple inquiry among them should disclose the identity of the person who conferred with plaintiff and with Needham. ■ In any event, prejudice does not appear as a matter of law and the trial court's finding that none exists will not be disturbed on appeal. (*McIntyre* v. *Doe & Roe* (1954) 125 Cal.App.2d 285, 287 [270 P.2d 21].)

It is not contested that, if the judgment of reformation is proper, plaintiff is entitled to recover on the policy as reformed.

The judgment is affirmed.

Files, P. J., and Jefferson, J., concurred.