[No. G012705. Fourth Dist., Div. Three. Apr. 13, 1994.]

MARY JANE HADLAND et al., Plaintiffs and Respondents, v.
NN INVESTORS LIFE INSURANCE COMPANY, INC., et al.,
Defendants and Appellants.

## Counsel

Adams, Duque & Hazeltine, Alan S. Breckenridge and Margaret Levy for Defendants and Appellants.

Farnell & Brown and Margaret Kathryn Maas for Plaintiffs and Respondents.

## Opinion

**SONENSHINE, J.**—NN Investors Life Insurance Company, Inc. (NN), National Association for the Self-Employed (NASE), Kevin E. Winn, Winn & Associates, Bob Winn, United Group Association, Inc., and Aegon USA, Inc. (referred to collectively as defendants, except where individual identification is necessary), appeal from an adverse judgment following jury trial of an action brought by Mary Jane Hadland and Fred Hadland to recover damages arising from an insurance dispute. Defendants contend a multitude of errors committed by the trial court mandate reversal. The Hadlands have filed a protective cross-appeal.

*Factual and Procedural Background*

In the fall of 1985, the Hadlands were notified of a 10 percent increase in the premiums for their health insurance under a policy with Reliance Standard Life Insurance Company. The Reliance major medical policy paid 80 percent of medical and hospital expenses, subject to a $250 deductible. The Hadlands began to look for less expensive coverage. When they received a mailing from NASE describing low-cost group hospital insurance available to NASE members through NN, they sent in a postcard asking for further information. Kevin Winn, associated with NASE, NN and United Group Association (UGA) (a company that markets NN insurance), contacted the Hadlands and, on December 5, came to their place of business to make a sales presentation. According to the Hadlands, Winn told them coverage under the NN policy was "as good if not better" than coverage under the Reliance policy, at half the premium cost. Promotional materials described the policy as offering major hospital benefits. The Hadlands joined NASE and applied for NN coverage. As it turned out, the NN policy was, as Winn had stated, half as expensive as the Reliance policy, but it did not cover most outpatient medical expenses. Moreover, NN's benefits were paid according to a maximum benefit schedule which, in some cases, covered less than 50 percent of the actual charge for a surgical procedure. For instance, the maximum surgical benefit available under the policy was $6,000, regardless of the actual cost, and the maximum hospital room and board benefit for nonintensive care was $300 a day.

In January 1986, the Hadlands received a certificate of insurance indicating their coverage benefits under the NASE group policy. In an attached letter, they were asked to read the certificate and call the NN office if they had any questions. The first page of the certificate advised them that if the policy did not meet their needs, they could return it within 10 days for a full refund.[1] NN sent the Hadlands a second letter to confirm their receipt of the certificate and to ask them to contact the insurer if they had any questions concerning coverage. The Hadlands did not read the insurance contract. In November, Mary Jane Hadland was hospitalized for a surgical procedure. She incurred nearly $26,000 in medical and hospital bills. NN paid less than one-half, which, the Hadlands concede, was the total of benefits due under the policy.

In September 1987, the Hadlands filed suit to recover additional benefits. Their first amended complaint, seeking compensatory, general and punitive

---

[1]In relevant part, the certificate stated: "It is important to us that you understand and are satisfied with the coverage being provided to you. If you are not satisfied that this coverage will meet your insurance needs, you may return this Certificate to us at our Regional Office in Hurst, Texas within 10 days after you receive it and you will receive a full refund of all premiums you have paid."

damages and injunctive relief, alleged eight causes of action, of which only two are relevant here: fraud and breach of statutory duties under Insurance Code section 790.03, subdivision (h),[2] which defines unfair settlement practices.

The case went to trial on March 11, 1992. At the court's suggestion, the Hadlands filed a second amended complaint, alleging a new cause of action for unfair insurance practices, under subdivisions (a) and (b) of section 790.03. As relevant here, those subdivisions deal with publications which mislead or deceive the public about the true nature of the insurance company or its policies. In pursuit of that cause of action, and over defendants' objections, the Hadlands were permitted to present evidence—including deposition testimony from a Nevada lawsuit—of third parties holding a variety of grudges against NN.

At the conclusion of the Hadlands' case-in-chief, the court granted defendants' motion for nonsuit as to all causes of action except the newly asserted claim under section 790.03, subdivisions (a) and (b). The jury returned a verdict in favor of the Hadlands and against all defendants, awarding damages in excess of $600,000. The judgment cannot stand.

*Discussion*

I

■ Defendants' first contention is the court erred in permitting the Hadlands to amend their complaint at the beginning of the trial to state causes of action for breach of statutory duties set forth in section 790.03, subdivisions (a) and (b). We agree.

In 1987, when the Hadlands filed their complaint, the law under *Royal Globe Ins. Co.* v. *Superior Court* (1979) 23 Cal.3d 880 [153 Cal.Rptr. 842, 592 P.2d 329] allowed private causes of action for an insurer's unfair settlement practices, as defined in voluminous detail in section 790.03, subdivision (h). In their original complaint, the Hadlands stated a cause of action alleging unlawful conduct described in six of subdivision (h)'s subparagraphs.[3] But a year after they filed their complaint, the Supreme Court overruled *Royal Globe*. In *Moradi-Shalal* v. *Fireman's Fund Ins. Companies*

---

[2] All further statutory references are to the Insurance Code unless otherwise stated.

[3] The Hadlands alleged appellants, with a frequency to indicate a general business practice, had: misrepresented pertinent facts relating to coverage (subd. (h)(1)); failed to acknowledge and act reasonably promptly on the Hadlands' claim (subd. (h)(2)); failed to adopt and implement reasonable standards for prompt investigation and processing of claims such as the Hadlands' (subd. (h)(3)); failed to affirm or deny the Hadlands' claim within a reasonable

(1988) 46 Cal.3d 287 [250 Cal.Rptr. 116, 758 P.2d 58], it decided "section 790.03 . . . was [not] intended to create a private civil cause of action against an insurer that commits one of the various [prohibited] acts." (*Id.*, at p. 304.)[4] ▉ *Moradi-Shalal* dealt with subdivision (h) of the statute, but it implicitly abolished *all* private causes of action for insurer violations of the Unfair Insurance Practices Act. (*Zephyr Park* v. *Superior Court* (1989) 213 Cal.App.3d 833, 837-838 [262 Cal.Rptr. 106].)

In overruling *Royal Globe*, the *Moradi-Shalal* court, "[w]ithout implying any broad exception to the general rule of retrospectivity [of decisional law]," determined its decision should apply prospectively only. (*Moradi-Shalal* v. *Fireman's Fund Ins. Companies, supra*, 46 Cal.3d 287, 305.) "[I]n the interest of fairness to the substantial number of plaintiffs who have already initiated their suits in reliance on *Royal Globe*, we hold that our decision overruling that case will not apply to those cases seeking relief under section 790.03 filed before our decision here becomes final." (*Ibid.*)

▉ The Hadlands do not contend they sought to amend their complaint to allege additional causes of action under the statute before *Moradi-Shalal* became final. Rather, they argue that because their original complaint alleged a cause of action under section 790.03, subdivision (h), they were already involved in *Royal Globe* litigation, and the *Moradi-Shalal* decision allows them to maintain their late-asserted additional breach-of-duty claims under different subdivisions of the same statute. They are mistaken.

In the first place, with regard to their claims under subdivisions (a) and (b) of section 790.03, they could not have "initiated their suit[] in reliance on *Royal Globe*." (*Moradi-Shalal* v. *Fireman's Fund Ins. Companies, supra*, 46 Cal.3d 287, 305.) The *only* claim they stated in reliance on *Royal Globe* was for unfair settlement practices under subdivision (h). In the second place, the fairness consideration underlying *Moradi-Shalal*'s narrow exception to the rule of retrospectivity would be ill-served by allowing plaintiffs to use it as a loophole for asserting *new* theories of statutory liability several years after finality of the decision. Indeed, it was fairness that prompted the *Moradi-Shalal* court to provide a last-gasp window of opportunity for plaintiffs to allege statutory claims in the interim between the filing of the decision and

---

time after receiving proof of loss (subd. (h)(4)); attempted to induce the Hadlands to settle their claim for less than the amount which the Hadlands would believe they were entitled to based on appellants' advertising materials (subd. (h)(7)); and failed to promptly give the Hadlands a reasonable explanation of the basis for denial of the claim (subd. (h)(13)).

[4]In reversing itself, the court noted, inter alia, the rejection of *Royal Globe* by other state courts, the widespread scholarly criticism of the opinion, and the adverse consequences, analytical difficulties and confusion it had engendered. (*Moradi-Shalal* v. *Fireman's Fund Ins. Companies, supra*, 46 Cal.3d 287, 296-304.)

its finality. (See, e.g., *Marenger* v. *Hartford Accident & Indemnity Co.* (1990) 219 Cal.App.3d 625 [268 Cal.Rptr. 290]; *Cooper* v. *Equity Gen. Insurance* (1990) 219 Cal.App.3d 1252, 1257, fn. 1 [268 Cal.Rptr. 692]: "[C]laims such as this one, filed *in reliance* on *Royal Globe* and before *Moradi-Shalal* . . . are still viable." [Italics added.]) The Hadlands were on notice, in 1988, that the *Royal Globe* era was drawing to an end. There would be nothing fair about extending *their* window of opportunity to 1993.

The Hadlands are in the same situation as was the plaintiff in *Smith* v. *State Farm Mut. Auto. Ins. Co.* (1992) 5 Cal.App.4th 1104 [7 Cal.Rptr.2d 131], who filed a pre-*Moradi-Shalal* complaint stating a third party cause of action under section 790.03, subdivision (h), and then, after finality of *Moradi-Shalal*, attempted to allege, for the first time, another cause of action under the statute, by assignment from the insured. The reviewing court affirmed the trial court's order sustaining defendants' demurrers to both causes of action, the latter on the basis that the new cause of action was asserted "well after the *Moradi-Shalal* decision." (5 Cal.App.4th at p. 1116.)[5]

The Hadlands' causes of action under section 790.03, subdivisions (a) and (b) were not filed before *Moradi-Shalal* became final, nor were they filed in reliance on *Royal Globe*. Both the letter and the spirit of *Moradi-Shalal* bar the Hadlands from maintaining causes of action asserted for the first time more than four years after the decision became final. Nevertheless, the Hadlands contend the amendments were proper. They argue their original causes of action for breach of the covenant of good faith and fair dealing, fraudulent and negligent misrepresentation and unlawful business practices alleged the same kinds of fraudulent and misleading advertising activities that are proscribed in subdivisions (a) and (b) of the statute, thus the amendments simply changed the *theory* of recovery. They point to the liberal rule governing amendments, implicitly arguing appellants did not suffer undue prejudice by virtue of the Hadlands' belated assertion of the statutory claims.

But the issue is not whether appellants suffered prejudice from the lapse of time; it is whether the Hadlands are legally barred from asserting the statutory claims. And it is no answer for the Hadlands to say they pleaded the *equivalent* of claims under section 790.03, subdivisions (a) and (b), albeit those claims bore a common law label. There is a difference, as the *Moradi-Shalal* court noted when it pointed out that plaintiffs retain available remedies against insurers, even without the right to maintain section 790.03

---

[5]The Hadlands argue the only reason the *Smith* plaintiff's belatedly asserted claim was disallowed was that it was barred by the statute of limitations. Not so. The *Smith* court states, without equivocation: "The second and third causes of action may be discussed briefly. Both are barred by [*Moradi-Shalal*.]" (*Smith* v. *State Farm Mut. Auto. Ins. Co.*, supra, 5 Cal.App.4th 1104, 1116.) And it goes on to note the assigned first party claim of the second cause of action falls within the general prohibition of *Moradi-Shalal*. (*Ibid.*)

causes of action. "[A]part from administrative remedies, the courts retain jurisdiction to impose civil damages or other remedies against insurers in appropriate common law actions, based on such traditional theories as fraud, infliction of emotional distress, and (as to the insured) either breach of contract or breach of the implied covenant of good faith and fair dealing. Punitive damages may be available in actions not arising from contract, where fraud, oppression or malice is proved. [Citation.] In addition, prejudgment interest may be awarded where an insurer has attempted to avoid a prompt, fair settlement. [Citation.]" (*Moradi-Shalal* v. *Fireman's Fund Ins. Companies, supra*, 46 Cal.3d 287, 304-305.) Clearly, allegations stating a common law cause of action will not suffice as a basis for legitimizing statutory claims otherwise barred by *Moradi-Shalal*.

The same reasoning defeats the Hadlands' circular argument they simply amended their complaint according to proof of defendants' violation of their statutory duties. Such proof is irrelevant in a private civil suit for damages if, as here, the plaintiff is barred from maintaining a claim under the statute.[6]

Our disposition makes it unnecessary for us to decide the merits of appellants' contention, raised for the first time on appeal, that no private right of action *ever* existed under section 790.03, subdivisions (a) and (b). Even assuming, arguendo, that *Royal Globe* causes of action could have been stated under those subdivisions before *Moradi-Shalal*, they could not be newly asserted after the decision became final. The trial court erred in permitting the Hadlands to amend their complaint to state causes of action for breach of statutory duties under the Unfair Insurance Practices Act.

II

The trial court granted defendants' motions for nonsuit as to all causes of action except the one under section 790.03, subdivisions (a) and (b). Because we have decided the Hadlands are barred from asserting the *only* cause of action on which they recovered, defendants are entitled to judgment in their favor unless the Hadlands' protective cross-appeal has merit. It does not.

---

[6]The Hadlands cite *Crittenden* v. *McCloud* (1951) 106 Cal.App.2d 42 [234 P.2d 642] for the proposition a "trial judge has an affirmative duty to allow an amendment to conform to proof where otherwise the moving party might not prevail due to *legal technicalities*." *Crittenden* does not proclaim the unqualified and expansive rule attributed to it by the Hadlands. But even if it did, the issue here is not one of "legal technicalities," but of substantive law, and *Crittenden* is of no help.

■■ The Hadlands contend the court erred in granting a nonsuit on their fraud cause of action.[7] They argue the court's erroneous application of the parol evidence rule resulted in the exclusion of admissible evidence which would have sustained their burden of proving a prima facie case to take to the jury. We do not reach the parol evidence issue because we agree with the trial court that the Hadlands failed to establish the requisite fraud element of justifiable reliance, thus any error regarding parol evidence was harmless.

To take their fraud cause of action to the jury, the Hadlands had to prove not only defendants' false representations, but their own justifiable reliance. (5 Witkin, Summary of Cal. Law (9th ed. 1988) § 676, p. 778.) And although the issue of justifiable reliance ordinarily presents a question of fact (*Blankenheim* v. *E. F. Hutton & Co.* (1990) 217 Cal.App.3d 1463, 1475 [266 Cal.Rptr. 593]), there are cases in which it may be decided as a matter of law. (*Hackethal* v. *National Casualty Co.* (1987) 189 Cal.App.3d 1102, 1111 [234 Cal.Rptr. 853].) This is such a case.

The Hadlands admit they did not read the insurance contract.[8] The trial court, noting that admission, stated: "But then there's the whole issue of justifiable reliance and the duty to read. . . . [¶] But on the issue of justifiable reliance, there's no evidence of justifiable reliance because the plaintiff has to prove justifiable reliance, and the plaintiff is up against the case law duty to read. And so there's no evidence of justifiable reliance based upon that." The case law to which the court referred sets forth " 'a general rule that the receipt of a policy and its acceptance by the insured without an objection binds the insured as well as the insurer and he [or she] cannot thereafter complain that he [or she] did not read it or know its terms. It is a duty of the insured to read his [or her] policy.' [Citation.]" (*Aetna Casualty & Surety Co.* v. *Richmond* (1977) 76 Cal.App.3d 645, 652 [143 Cal.Rptr. 75].) As Division One of this district has recently reiterated: " 'A reasonable person will read the coverage provisions of an insurance policy to ascertain the scope of what is covered. [Citation.]' . . . Generally the insured is 'bound by clear and conspicuous provisions in the policy even if evidence suggests that the insured did not read or understand them.' [Citation.]" (*Malcom* v. *Farmers New World Life Ins. Co.* (1992) 4 Cal.App.4th 296, 304, fn. 6 [5 Cal.Rptr.2d 584].)

The general rule was applied in *Hackethal* v. *National Casualty Co., supra,* 189 Cal.App.3d 1102, where the insurer marketed and sold to the plaintiff

---

[7]The Hadlands do not challenge the nonsuit with respect to any other causes of action.

[8]The Hadlands said they did not review the insurance policy because they did not understand "insurance verbiage," they trusted the insurance salesman and relied on his representations as to the nature and extent of the NN coverage, and they had reviewed the promotional materials.

physician a policy called "Defendants Reimbursement Policy." The broker's promotional brochure made certain representations regarding benefits to the physician for days spent in court as a defendant in a professional negligence action. (*Id.* at p. 1106.) The front of the brochure proclaimed: " 'Protect yourself from loss of income with a DEFENDANTS REIMBURSEMENT POLICY up to $5,000.00 PER TRIAL only $30.00 a YEAR.' " (*Ibid.*) A prominent caveat warned: " '*This brochure briefly outlines the insurance plan. Complete details and provisions of the insurance are contained in the policy.*' " (*Ibid.*) The broker told Hackethal the policy would cover him if he had to be out of the office for "any suit filed against him, even on matters other than malpractice." (*Id.* at pp. 1107.) The specific topic of disciplinary administrative hearings never came up.

The Attorney General filed an accusation against Hackethal, charging him with gross negligence, incompetence and criminal acts and seeking revocation of his license to practice medicine. (*Hackethal* v. *National Casualty Co.*, *supra*, 189 Cal.App.3d 1102, 1108.) The administrative hearing lasted 39 days. When Hackethal's insurer denied his claim for benefits, Hackethal sued. The court denied defendants' motion for directed verdicts on the fraud cause of action.

Reversing, the appellate court noted the required elements of a tort action for deceit and held that if the physician relied on the broker's statements in forming the belief administrative hearings were covered by the policy, "his reliance was *unjustifiable* as a matter of law." (*Hackethal* v. *National Casualty Co.*, *supra*, 189 Cal.App.3d 1102, 1111.) The policy itself provided coverage for " 'each day the insured is required to attend *the trial of a civil suit for damages against the insured* alleged to have been caused' either 'by malpractice in the practice of the profession of the insured' . . . or 'by an automobile accident' . . . ." (*Id.* at pp. 1109-1110.) "The brochure . . . put [Hackethal] on notice that the terms of the policy controlled the extent of his coverage. The brochure clearly states: 'This brochure briefly outlines the insurance plan. Complete details and provisions of the insurance are contained *in the policy.*' (Italics added.) Moreover, the policy itself proclaims in bold letters: 'PLEASE READ YOUR POLICY.' Dr. Hackethal testified that he did in fact read his policy when he received it, but stated that he 'didn't analyze it. . . .' He should have done so." (*Id.* at p. 1112.)[9]

The Hadlands contend *Hackethal* is distinguishable because the policy there, unlike the NN policy, was clear and unambiguous and, had Hackethal

[9]*Taff* v. *Atlas Assur. Co.* (1943) 58 Cal.App.2d 696 [137 P.2d 483] further illustrates the principle. There, the plaintiff sought to reform an insurance contract on the grounds, inter alia, of fraud, claiming he was told by the agent the policy afforded the broadest coverage available and at a lesser premium than another policy and was designed to protect the custom of the jeweler's trade. (*Id.* at p. 698.) The plaintiff suffered a loss which fell within a policy exclusion—theft of his briefcase full of jewelry from the car in which he had left it

only read it carefully, he would have learned the truth.[10] They assert even if they had read their policy, they would not have known its coverage was inferior to the Reliance coverage because the benefits could not be calculated until after expenses had been incurred.

Nonsense. The issue is not whether the precise dollar amount of the benefits could be calculated in the abstract, but whether a comparison of NN's stated coverage with that offered by the Reliance policy would have revealed the NN policy offered less protection.[11] In this regard, NN policy's schedule of benefits expressly provided, for instance: an entirely unambiguous *maximum* surgical benefit of $6,000, regardless of whether the surgery consisted of an organ transplant, a partial or radical mastectomy or the amputation of a toe;[12] a *maximum* nonintensive care hospital room and board benefit of $300 a day; and a *maximum* benefit of $300 a day for outpatient hospital charges. The Reliance policy provided unqualified benefits of 80

unattended. He said he had relied upon the statement of the insurer's agents in buying the policy—that it would protect him " 'under any and all circumstances.' " (58 Cal.App.2d at p. 699.) The *Taff* court said plaintiff failed to prove he was a victim of fraud. There was no reason the insurer should have suspected him to be ignorant of the terms of his policy, including its exclusions. "The insurer was not required to furnish absolute coverage." (*Id.* at p. 701.) "Not only did ordinary prudence require that he examine it to see that it was the policy he had intended to purchase but in bold letters on the very face of it he was admonished to read and return it for correction." (*Id.* at p. 702.) The *Taff* court also noted a "casual reading" would have revealed the policy did not protect him "under any and all circumstances." (*Ibid.*) The plaintiff was not entitled to relief from the result of his failure to read the policy; had he read it, and the terms did not provide the coverage he expected, he could have rejected it. (*Ibid.*)

[10]The Hadlands also contend *Hackethal* is inapt because it did not involve misrepresentations at odds with the policy language. The brochure may not have directly misrepresented the policy's coverage, but the broker clearly did. As the court noted: "Now, with regard to the brochure, significantly, the [broker] handed it to Dr. Hackethal at the time the agent is alleged to have made the misrepresentations regarding coverage. The boldly printed material in the brochure contradicted the misrepresentations allegedly made by the [broker] to the effect that the National policy would cover Dr. Hackethal even if he were merely a *witness* in a suit against another doctor. In at least four places on the brochure the policy is described as the '*DEFENDANTS'* REIMBURSEMENT Policy,' and on the cover of the brochure in large letters appears the question, 'IF *YOU* WERE SUED WHAT WOULD YOU LOSE?' (Italics added.)" (*Hackethal* v. *National Casualty Co., supra*, 189 Cal.App.3d 1102, 1111.) The *Hackethal* court did *not* find there were no material misrepresentations; it found Hackethal could not have justifiably relied on any such misrepresentations.

[11]Initially, we observe the NN's certificate of insurance described the policy as one for "MAJOR HOSPITAL EXPENSE COVERAGE," while the Reliance policy was a major *medical policy*, leading to the reasonable conclusion the coverage of the former was less comprehensive than that of the latter. In any event, if the title alone did not make that fact clear, the express provisions of the schedule of benefits, discussed *post*, did.

[12]The Hadlands contend different percentages of the $6,000 maximum benefit applied to different surgeries, creating an ambiguity. It is true 100 percent of the $6,000 was available in the case of a heart transplant, while only 50 percent was available for a hysterectomy, but that does not change the *fact* of the maximum benefit or create any ambiguity as to that fact.

percent of covered expenses. Thus, any representations by defendants of "full protection" under the NN policy, or coverage "as good or better" as the Reliance policy, were patently at odds with the express provisions of the written contract. If the Hadlands had read it, they would have discovered its limitations, rejected it, and continued to pay the higher premium for the increased security of Reliance's more comprehensive coverage.

■ Absent an ambiguity, ". . . courts may not rewrite the insurance contract or force a conclusion to exact liability where none was contemplated." (*Hackethal* v. *National Casualty Co.*, *supra*, 189 Cal.App.3d 1102, 1109.) As the Supreme Court stated in *Sarchett* v. *Blue Shield of California* (1987) 43 Cal.3d 1, 15 [233 Cal.Rptr. 76, 729 P.2d 267], a court "must hold the insured bound by clear and conspicuous provisions in the policy even if evidence suggests that the insured did not read or understand them." ■ The Hadlands, having failed to read the policy and having accepted it without objection, cannot be heard to complain it was not what they expected. Their reliance on representations about what they were getting for their money was unjustified as a matter of law.[13]

The judgment is reversed. The matter is remanded with directions to the court to enter judgment in favor of defendants and to award them their costs, including those incurred on appeal.

Sills, P. J., concurred. Crosby, J., concurred in the result.

A petition for a rehearing was denied May 9, 1994, and respondents' petition for review by the Supreme Court was denied August 11, 1994. Mosk, J., and Kennard, J., were of the opinion that the petition should be granted.

---

[13]Our disposition of the fraud issue makes it unnecessary for us to decide the other issue raised by the Hadlands in their cross-appeal.